Frank A. RAMIREZ

v.

The UNITED STATES.

No. 312–75.

United States Court of Claims.

July 9, 1976.

Michael C. Ferguson, Berkeley, Cal., attorney of record, for plaintiff.

Rose Anne Featherston, with whom was Asst. Atty. Gen. Scott P. Crampton, Washington, D. C., for defendant. Theodore D. Peyser and Robert S. Watkins, Washington, D. C., of counsel.

Before LARAMORE, Senior Judge, and DAVIS and SKELTON, Judges.

## ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

LARAMORE, Senior Judge.

In this suit for refund of Federal income tax,[1] plaintiff (hereinafter "taxpayer") contends that the government's assessment of a deficiency in his income tax for 1967 was barred by the statute of limitations. The record does not specifically address the merits of the tax assessed, nor is there any controversy as to the amount of the tax collected. Hence, our consideration is limited solely to the question of whether the assessment was made in a timely fashion. For reasons enunciated below, we hold that it was.

The material facts are not in dispute. On December 12, 1970, taxpayer agreed in writing to extend until June 30, 1972 the period during which a timely assessment could be made of his 1967 income tax. The period would otherwise have expired on April 16, 1971.[2] The agreement, executed by both taxpayer and the government, was a standard Internal Revenue Service Form 872 entitled, "Consent Fixing Period of Limitation Upon Assessment of Income and Profits Tax, which reads, in pertinent part, as follows:

[The taxpayer and the government consent and agree] [t]hat the amount of any Federal income and profits taxes due under any return (or returns) made by or on behalf of the above-named taxpayer (or taxpayers) for the taxable year ended December 31, 1967 under existing or prior revenue acts, may be assessed at any time on or before June 30, 1972 except that if a notice of a deficiency in tax is sent to the taxpayer (or taxpayers) by certified or registered mail on or before that date, then the time for making any assessment shall be extended beyond that date by the number of days during which an assessment is prohibited and for sixty days thereafter.[3]

On March 14, 1972, taxpayer was sent, by certified mail, a statutory notice of a deficiency in his 1967 income tax. The deficiency was assessed against him on September 4, 1972. Collection was accomplished by compulsorily applying overpayments inad-

---

1. All citations hereinafter made to the "Code," or to sections contained therein, are, unless otherwise indicated, in reference to the Internal Revenue Code of 1954.

2. Section 6501(a) provides, with exceptions not here relevant, that the amount of any tax imposed by the Code shall be assessed within three years after the return reporting such tax was filed. Section 6501(b)(1) provides that returns filed before the last day prescribed by law for the filing thereof shall be considered as filed on the last day. See also Treas.Reg. § 301.6501(b)–1(a). In the instant case, under section 6072(a), taxpayer's 1967 return was due on or before April 15, 1968. Therefore, the 3-year statute of limitations commenced running on April 16, 1968, and would have expired on April 16, 1971.

3. Except for the dates December 31, 1967 and January 30, 1972, which were typewritten, all of the language quoted above was in printed form.

vertently made in respect of later years' taxes (1972 and 1973) in satisfaction of the earlier deficiency.

Subsequently, taxpayer filed a claim with the Internal Revenue Service for refund of that part of his 1967 income tax which had been collected as a deficiency. The claim, which alleged only that the assessment of the deficiency had been barred by the statute of limitations, was in due course disallowed. Thereafter, this suit followed.

Inasmuch as taxpayer grounds his right to recovery upon the sole argument that the assessment of the tax was not effective until after the statute of limitations had outlawed it, logic dictates that we first examine the relevant statute or statutes relating to the limitation of assessments. Section 6501(a)[4] embodies what may be referred to, for Federal tax assessment purposes, as a general statute of limitation. It directs that, unless otherwise provided, the amount of any tax imposed by the Internal Revenue Code be assessed within three years after the date on which the return for such tax was filed. Section 6501(c)(4),[5] however, permits a taxpayer and the government to mutually consent to enlarge, by written agreement entered into prior to the expiration of the natural period of limitation, the time within which any tax, except an estate tax, may be timely assessed.

In the case at bar, taxpayer and the government implemented subsection (c)(4) through the written agreement set out in the paragraph above. The undisputed effect of the language therein used was to extend the expiration date of the statutory period at the very least, to June 30, 1972. However, were June 30, 1972 an immutable cutoff date, taxpayer would without more, prevail in this case because the assessment, on September 4, 1972, was made more than two months later. But we note that the agreement contained a proviso which specified that if a notice of deficiency were sent to the taxpayer before that date (meaning June 30, 1972), then the time for making an assessment would be further extended. Such a notice was sent on March 14, 1972. Thus, the precise number of days by which the June 30, 1972 original cutoff date was extended upon the sending of the notice, determined the timeliness *vel non* of the assessment.

Further scrutiny of the agreement is necessary. The formula used in the agreement under which the contractual limitation period was to be extended, incorporated by reference a calculable but unspecified measure. It provided that the time for making any assessment would be extended (after the notice of deficiency was sent) by the number of days during which an assessment would be prohibited, and for 60 days more.

Dual issues are raised by this formula. One concerns the numerical measure used, i.e., the number of days. However, both parties urge that 90 days is the correct figure. In light of section 6213(a),[6] we

4. "Sec. 6501. *Limitations on Assessment and Collection.*

"*(a) General Rule.*—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period."

5. [Sec. 6501] "*(c) Exceptions.*— * * * (4) *Extension by agreement.*—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon."

6. "Sec. 6213. *Restrictions applicable to deficiencies; petition to Tax Court.*

"*(a) Time for filing petition and restriction on assessment.*—Within 90 days, or 150 days if the notice is addressed to a person outside the States of the Union and the District of Columbia, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redeter-

agree. That section provides (with certain exceptions not relevant here) that where the government issues a notice of a deficiency, the tax may not be assessed until 90 days have expired. Evidently, this period permits the taxpayer time to resist the deficiency, either administratively or by filing a petition in the Tax Court. In any case, 90 days is the proper measure to be incorporated into the agreement, and the time for making any assessment was, thus, to be extended for 90 days and 60 days thereafter, or a total of 150 days.

The other, more debated issue, concerns the manner in which the contractual limitation period was to be enlarged. Taxpayer contends that the 150 days was intended to run from the date the notice of deficiency was sent (March 14, 1972) or only until August 11, 1972. This interpretation would bar the September 4, 1972 assessment.

Two subarguments are said, by taxpayer, to buttress this contention. The first is that the phrase "that date," used for the second time in the agreement, referred not to June 30, 1972, but to the date upon which the notice of deficiency was sent. Taxpayer, therefore, takes the position that the phrase "that date" twice used in the agreement, referred to two different dates.

After examining the language of the agreement, we are unable to accept this line of reasoning. It is not reasonable to assert that the phrase "that date", used twice in the same sentence, referred to two separate dates, without any hint that it did in the language itself. The only date set forth in the agreement that refers to the assessment was June 30, 1972. Under the plain wording of the agreement, which belies the construction taxpayer would place upon it, taxpayer's position is patently incorrect, and

we need not devote any more time to this facet of his argument.

Taxpayer's second point is that the agreement at bar, and in particular the extension proviso contained therein, must be read not merely in *pari materia* with section 6213(a) of the Code (providing for the 90-day prohibition upon assessment), but also in light of the effect that section could have upon the making of an assessment within a period of limitation extended by agreement. Taxpayer perceives that, in the absence of an automatic extension proviso, the government could find itself in the anomalous position of sending a notice of deficiency near the end of a contractual limitation period and being foreclosed from ever making the assessment because the following 90 days would run past the contractually extended cutoff date. The proviso is said to be designed specifically to avoid this pitfall by allowing the government a 60-day grace period immediately after the 90 days comes to an end.

While this argument of taxpayer has appeal insofar as it signals the *animus* behind the proviso, we think that the taxpayer has, more or less, jumped to the conclusion that a "fair" construction of the language must allow for only the shortest extension of the contractual limitation period that would assure the government an opportunity to assess in a timely fashion. This is not necessarily so. The rather explicit language of the proviso provides that the 150 days be applied so as to "extend" the contractual limitation period by that amount, and the wording of the proviso admits of no other tenable construction.

In point of fact, at the time the agreement was executed the identical result was already assured by the Code. Section 6503(a)(1)[7] suspends the running of the pe-

---

mination of the deficiency. Except as otherwise provided in section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B or chapter 42 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor if a petition has been filed

with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court."

7. "Sec. 6503. *Suspension of running of period of limitation.*

riod of limitations, when a notice of deficiency is sent, for the period during which an assessment is prohibited and for 60 days thereafter. In light of the striking similarity between section 6503(a)(1) and the proviso contained in the agreement, we think the latter was designed to foster the policy underlying the former. That is to say, the section and proviso avoid in the identical manner the pitfall to which taxpayer refers.

Moreover, this is a conclusion we draw not by mere cursory comparison of the corresponding language of section 6503(a)(1) and the proviso. Our research discloses that section 277(b) of the Revenue Act of 1924,[8] precursor to section 6503(a)(1) of the current Code, used the word "extended" to achieve the same effect that "suspended" achieves in the current section of the Code. Apparently, in the Revenue Act of 1926, section 277(b),[9] Congress varied the term used to describe the manner under which the limitation period was to be automatically enlarged in certain instances. The 1924 Act provided that the limitation period would be "extended", while the 1926 Act provided that the running of the limitation period would be "suspended." With either of these terms, the manner in which the limitation period was to be enlarged is identical. We find little distinction, for purposes of the instant case, in saying on the one hand that a period is to be "extended" by 90 days and, on the other hand, that the running of a period is to be "suspended" for 90 days. Thus, the change from "extension" to "suspension" in the tax statutes had, for purposes of our analysis, no apparent effect on the manner in which the enlargement was to be applied.

In *Continental Oil Co. v. United States*, 14 F.Supp. 533, 83 Ct.Cl. 344, *cert. denied*, 301 U.S. 694, 57 S.Ct. 921, 81 L.Ed. 1349 (1936), after quoting from both statutes, we applied the formula of the 1926 Act by taking the original period of limitations, allowing a number of days of suspension during which the period was tolled, and then at the end adding the unexpired period. It is readily apparent that if the term "extended" had been used, the same effect would have been achieved.

This analysis of the legislative switch from "extended" to "suspended" suggests that because no change in effect was intended, a prior opinion of this court which has already construed the use of "suspended" in a context similar to the case at bar, should be helpful and persuasive in our effort to treat the proviso's use of the word "extended." In *Olds & Whipple Inc. v. United States*, 22 F.Supp. 809, 819, 86 Ct.Cl. 705, 724 (1938), the court stated:

* * * *[T]he Commissioner is entitled, in making the assessment of a deficiency extended (1) by 60 days if a notice of such deficiency has been mailed to the taxpayer under subdivision (a) of section 274 and no appeal has been filed with the Board of Tax Appeals, or (2) if an appeal has been filed, then by the number of days between the date of the mailing of such notice and the date of the final decision by the Board."* [Emphasis supplied.]

---

"(a) *Issuance of statutory notice of deficiency.*—

"(1) *General rule.*—The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or the collection by levy or a proceeding in court, in respect of any deficiency as defined in section 6211 (relating to income, estate, gift and chapter 42 taxes), shall (after the mailing of a notice under section 6212(a)) be suspended for the period during which the Secretary or his delegate is prohibited from making the assessment or from collecting by levy or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for 60 days thereafter."

8. Section 277(b) of the Revenue Act of 1924, states as follows:

"*The period within which an assessment is required to be made by subdivision (a) of this section in respect of any deficiency shall be*

9. Section 277(b) of the Revenue Act of 1926, provides in part:

"*The running of the statute of limitations provided in this section or in section 278 on the making of assessments and the beginning of distraint or a proceeding in court for collection, in respect of any deficiency, shall (after the mailing of a notice under subdivision (a) of section 274) be suspended for the period during which the Commissioner is prohibited from making the assessment or beginning distraint or a proceeding in court, and for 60 days thereafter.*" [Emphasis supplied.]

*determined by the Board, to use the 60-day period together with any unexpired portion of the statute of limitation remaining at the time it became suspended by the mailing of the deficiency notice.* We think the language of the statute is not reasonably susceptible to any other construction. It plainly states that the running of the statute of limitation shall be suspended and this can only mean that when the period of suspension ceases the limitation period again commences to run. [Emphasis supplied.]

And the court summarized this point, 22 F.Supp. at 819, *Id.* at 725:

* * * Upon our interpretation of section 277(b) of the Revenue Act of 1926 as amended and section 277 of the Revenue Act of 1928, the statute of limitation *as extended by the suspended period* did not expire as to * * * [the years in question, prior to the date of the assessment.] [Emphasis added. Note the juxtaposition of the words "extended" and "suspended".]

The result of "tacking" reached by the court in *Olds & Whipple, Inc. supra*, under section 277(b) of the Revenue Act of 1926, is no different than that mandated by the express language of the agreement and proviso presently under consideration.

On the facts of this case, a statutory notice of deficiency was sent to taxpayer on March 14, 1972, and under section 6213(a), as mentioned above, no assessment of the deficiency in taxes could have been made for 90 days. Therefore, under the express terms of the agreement, and the proviso contained therein, the period during which the government could properly assess a tax deficiency was extended 90 days beyond the June 30, 1972 original cutoff date, and for 60 days thereafter, or, until November 27,

1972. The assessment, made on September 4, 1972, was therefore within the period of the extension provided for by the proviso in the agreement.

Finally, one further wrinkle needs to be covered. While our consideration of this case has been aimed, and the briefs of the parties have been directed, toward a construction of the subject agreement and the automatic extension proviso contained therein, we cannot neglect to note that the same result would have been reached merely by pointing to section 6503(a)(1) which, itself, suspends the running of the period of limitations.

Section 6503(a)(1) applies to the " * * * running of the period of limitations provided in section 6501 * * *." Since the agreement entered into between the parties was clearly done under authority of section 6501(c)(4), the extended contractual period of limitation was as much a "period of limitations provided for in section 6501" as was the otherwise controlling general 3-year period provided for in section 6501(a). Consequently, upon the mailing of the notice of deficiency by the government, section 6503(a)(1), on its own suspended the extended contractual period of limitation for the same 150 days and, without the aid of the automatic extension proviso in the agreement, the assessment would have been timely in any case.[10]

Accordingly, for the foregoing reasons, defendant's motion for summary judgment is granted, plaintiff's cross-motion is denied, and the petition is dismissed.

---

**10.** This second interpretation of the case, like the first one based upon the effect of the automatic extension proviso, relies upon both *Continental Oil Co. v. United States, supra*, and *Olds & Whipple, Inc. v. United States, supra*. In doing so, both interpretations specifically adhere to the "tacking" principle mentioned, where under either the extension agreement or section 6503(a)(1) the period during which an

assessment is prohibited and 60 days more is "tacked" on to the limitation period. To the extent that *Hoosac Mills Corp. v. Commissioner*, 75 F.2d 462 (1st Cir. 1935), cited by taxpayer in the instant case, departs from this formula, we decline to follow it. *Accord, Aura Grimes Bales v. Commissioner*, 22 T.C. 355 (1954). *See also, Olds & Whipple Inc. v. United States, supra*, 22 F.Supp. at 819, at 724.