**MERIDIAN WOOD PRODUCTS CO., INC., a corporation, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**Harry F. LENTON and Colleen Lenton, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 82–3668.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 7, 1983.

Decided Feb. 13, 1984.

William H. Kinsey, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for plaintiffs-appellants.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Sec., Libero Marinelli, Jr., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before FLETCHER and ALARCON, Circuit Judges, and JAMESON*, District Judge.

ALARCON, Circuit Judge:

In these consolidated appeals, taxpayers Harry and Colleen Lenton, and Meridian Wood Products, Inc. (Meridian) appeal from a judgment of the district court. The district court upheld the Internal Revenue Service's (IRS) disallowance of certain business expense deductions taken by Meridian. The court also determined that Meridian's reimbursement of these expenses to the Lentons constituted constructive dividends to them.

We are asked to decide whether the district court correctly determined that: (1) the IRS assessments of deficiency were timely; (2) Meridian's evidence of deducted business expenses failed to meet the substantiation requirements of section 274(d), 26 U.S.C. § 274(d) (1976); (3) Colleen Len-

---

* Hon. William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

ton's travel expenses were not properly deducted as business expenses by Meridian; and (4) amounts spent on a claimed roof repair were capital expenditures within the meaning of 26 U.S.C. § 263(a) and therefore not deductible as a business expense pursuant to 26 U.S.C. § 162(a). The Lentons also contest the timeliness of the IRS's assessment of deficiency. They further argue that the district court erred in concluding that Meridian's disallowed expenses, for which Meridian reimbursed the Lentons, were constructive dividends to them.

We affirm.

## FACTS

Meridian manufactures and sells wood products. The manufacturing facility consists of seven buildings. Meridian's books and records are kept in accordance with certified audit standards; financial statements are prepared by accountants. Harry Lenton holds 50 percent of the stock and is Meridian's president.

In preparing its tax returns, losses for 1974 and 1975 were carried back to 1971 and 1972, Meridian's profitable years. An audit of these years was conducted by IRS Agent Lynn Sanders. Additional tax and interest were assessed against the Lentons for 1975 ($7,604.00) and 1974 ($5,313.00). Meridian was assessed tax and interest for the year 1972 ($54,567.13).

The audit disclosed that Meridian's expenditures were recorded in check registers. Supporting papers, however, failed to indicate the business purpose of an expenditure, the persons entertained, and the date of each expense. Only vouchers submitted by Lenton to Meridian for these expenses gave any indication of these factors. Besides the vouchers, Lenton kept no other record of business expenses for which he was reimbursed by Meridian.

The parties agreed to two extensions of time for the IRS's assessments of deficiency. No petition with the tax court was filed. Appellants instituted an action in district court; this appeal followed.

## ANALYSIS

### I. Timeliness of the Assessments

Appellants Meridian and the Lentons first contend that the IRS's assessments of deficiency, dated November 4 and 5, 1979, respectively, were not timely. They argue that, under their extension agreement with the IRS, the limitations period was to commence on the date the notice of deficiency was sent by the IRS. The government asserts that the limitations period began to run on the extension date expressed in the agreement. The government further suggests that, in any event, the assessments were timely by operation of law.

Pursuant to section 6501(c)(4), 26 U.S.C. § 6501(c)(4) (1976)[1] appellants executed two agreements, in 1977 and 1979, to extend the limitations period for assessing the taxes in issue. The instant argument concerns the 1979 agreement which provides in part:

> [T]he amount(s) of any Federal Income Tax due under any return(s) made by or on behalf of the above-named taxpayer(s) for the period(s) ended October 31, 1974 and October 31, 1975 [in the case of Meridian] under existing or prior revenue laws, *may be assessed at any time on or before October 15, 1979, except that if a notice of deficiency in tax for any such period(s) is sent to the taxpayer(s) on or before that day, then the time for assessing the tax shall be further extended for the period in which the assessment is prohibited, and for 60 days thereafter.* Also, any assessment made within the extended period agreed upon may be collected in the same manner and subject to

---

1. Section 6501 sets forth the general three year limitations period for assessing a deficiency of tax. Section 6501(c)(4) provides:

   Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

   26 U.S.C. § 6501(c)(4) (1976).

the same provisions and limitations as in the case of an assessment of any tax made within the applicable statutory period. (Emphasis added)

Both parties agree that under the agreement, the limitations period would have expired on October 15, if no notice of deficiency had been sent. They also agree that since a notice was sent, the limitations period, under the agreement, was 150 days.[2] The only dispute is *when* this 150-day period commences. Under appellants' view, the extension agreement requires that the limitations period commence on the date the notice is sent. Accordingly, the limitations period set forth in the extension agreement began when the deficiency notice was sent—May 29, 1979—and ended 150 days later, on October 26, 1979. Consequently, the November assessments were not timely.

■ The IRS maintains that the plain language of the agreement discloses that the parties agreed to extend the limitations period to October 15, and if the IRS sent notices before that date, the limitations period would be further extended an additional 150 days beyond the October 15 deadline. The IRS asserts that the reference in the extension agreement to "the period in which the assessment is prohibited is a provision for [an] additional but unstated extension period." Thus, the clause determines the *amount of time* for extension rather than *when* the time period commenc-

es. Accordingly, the 150-day limitations period begins to run on October 15, 1979, the expiration date set forth in the agreement. The additional 60-day extension further advances the expiration date to March 13, 1980. We agree.

■ A notice of deficiency is a restriction on the assessment and collection of an asserted tax deficiency. Generally, the Commissioner may not attempt to collect an asserted tax deficiency until he has mailed a notice of deficiency and the time during which the taxpayer to petition the tax court has expired. 26 U.S.C. § 6213(a); *accord Shapiro v. United States,* 499 F.2d 527, 531 (D.C.Cir.1974), *aff'd sub. nom. Commissioner v. Shapiro,* 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976). In certain circumstances, however, a notice is not required. For example, the parties may execute a waiver of restriction thereby alleviating the Commissioner of any duty to send a deficiency notice. 26 U.S.C. § 6213(d) (1976); *accord Monge v. Smyth,* 229 F.2d 361, 368 (9th Cir.1956) (footnote omitted) (in construing section 272(d) of 1939 Revenue Act, which is currently section 6213(d), 26 U.S.C. § 6213(d) (1976), the court stated that a waiver obviated the need of sending a formal deficiency notice and precluded appeal to the tax court).[3]

Appellants argue that since they did not waive the notice of deficiency, such a notice

---

**2.** Section 6213(a) provides:

Within 90 days, or 150 days if the notice is addressed to a person outside the limited states, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6851 or section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B, chapter 41, 42, 43, 44, or 45 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a),

the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court. 26 U.S.C. § 6213(a) (1976).

Thus where, as here, a notice is sent, and the taxpayers do not file a tax petition, the IRS is prohibited by statute from assessing a deficiency for 90 days. 26 U.S.C. § 6213(a). Accordingly, 90 days is the "period of prohibition" referred to in the extension agreement. Since the agreement provides for an additional 60-day extension, the total limitations period is 150 days.

**3.** A jeopardy assessment is another exception to the notice of deficiency restriction. *See, e.g., Shapiro v. Secretary of State,* 499 F.2d 527, 531 (D.C.Cir.1974), *aff'd sub. nom. Commissioner v. Shapiro,* 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976).

was required. Thus, they maintain, under the agreement the 150-day period commenced on the sending of the notice. We disagree. The mere fact that appellants had not waived notice at the time the parties executed the extension agreement, does not mean that they could not have subsequently executed a waiver. Thus, the execution of a waiver of notice remained a factual possibility notwithstanding the fact that the parties entered into the extension agreement.

We conclude that the extension agreement provides that a notice of deficiency might or might not be sent. Had the appellants waived the requirement of a notice, no notice would have been sent. Under the agreement, October 15 would have been the expiration date of the limitations period. Because notice was sent under the express terms of the agreement, the limitation period which would have expired on October 15, was "further extended," for the period of prohibition—90 days. 26 U.S.C. § 6213(a). The additional 60-day extension in the agreement further advanced the expiration date to March 13, 1980.

Our conclusion is supported by *Ramirez v. United States,* 538 F.2d 888, 210 Ct.Cl. 537, *cert. denied,* 429 U.S. 1024, 97 S.Ct. 642, 50 L.Ed.2d 625 (1976). There, the court construed an extension agreement similar to the one before us. The agreement in *Ramirez* provided for an expiration date of June 30, 1972, "except that if a notice of a deficiency in tax is sent . . . on or before that date, then the time . . . shall be extended beyond that date by the number of days during which an assessment is prohibited and for 60 days thereafter." *Id.* at 889 (footnote omitted). As here, the taxpayer in *Ramirez* argued that the extension period ran from the date of the notice of deficiency. The taxpayer additionally pointed to the appearance of "that date" twice in the agreement, arguing that such a reference implied that two different limitations periods existed. The court rejected this contention, reasoning that the only date set forth in the agreement that referred to an assessment was June 30, 1972. Consequently, the 150-day period was to be measured

from "that date", not the date of the notice of deficiency. *Id.* at 891. *See also Estate of Goetz v. United States,* 286 F.Supp. 128, 130 (W.D.Mo.1968) (where taxpayer agreed to extension to June 30, notice requirement of § 6213(a) extended limitations period from that date).

Appellants attempt to distinguish *Ramirez* on the ground that the agreement there used the terms "beyond that date," while here the agreement uses the terms "further extended for the period of prohibition." Appellants contend the date set forth in the *Ramirez* agreement clearly referred to the commencement of the limitations period, while here the "further extended" language does not clearly refer to the October 15 expiration date.

We disagree. As in *Ramirez* the agreement here sets forth only one expiration date. The agreement contemplates that the sending of a notice of deficiency would "further extend" the limitations period beyond October for the period of time in which an assessment is prohibited plus 60 days. Since the appellants did not file a petition with the tax court, the period of prohibition is 90 days, (26 U.S.C. § 6213(a)), and the total limitations period is 150 days.

If appellants had filed a petition, the period would be extended until a decision of the tax court was rendered. *Id.* In other words, the amount of additional extension time triggered by the notice of deficiency depended on whether appellants filed a petition with the tax court. The extension agreement left unstated the amount of additional time triggered by the notice. The notice did not initiate the limitations period. We also agree with the IRS that even if the 150 day limitations period is measured from the date of the deficiency notice, the limitations period nonetheless expires on March 13, 1980, by operation of law.

Section 6503(a)(1) provides in part:

(a) Issuance of statutory notice of deficiency.

(1) General Rule—The running of the period of limitations provided in section 6501 . . . shall . . . be suspended for the

period during which the Secretary . . . is prohibited from making the assessment or from collecting . . . and for 60 days thereafter.

26 U.S.C. § 6503(a)(1).

Section 6501 provides that the statute of limitations for assessing a tax is three years. 26 U.S.C. § 6501(a). An exception to this rule is set forth in subsection (c)(4) for agreements extending the limitations period. 26 U.S.C. § 6501(c)(4).[4]

The plain language of section 6503 demonstrates that its suspension provision applies to contractually extended limitations periods. A contractually extended limitations period, authorized by § 6501(c)(4), is a limitations period within the meaning of § 6501. The extended limitations period therefore is subject to the suspension provision of § 6503(a).

Accordingly, the May 29 notice of deficiency suspended the extended limitations period 150 days. On that date, the limitations period resumed for the 139 remaining days. The assessments therefore were timely. *Ramirez,* 538 F.2d at 893.

In considering the application of section 6503(a)(1) to the extension agreement at issue in *Ramirez,* the court noted that since the extension agreement was entered into pursuant to the authority of section 6501(c)(4), the extended contractual period of limitation "was a . . . 'period of limitations provided for in section 6501(a)' . . ." *Id.* at 893. The *Ramirez* court accordingly concluded that § 6503(a)(1) suspended the extended contractual limitation period "for the same 150 days" [as was provided for in the extension agreement] upon the mailing of a notice of deficiency. *Id.* Accordingly, upon expiration of the 150-day period, the limitations period resumed for the unexpired time.

## II. *Meridian's Deductions for the Lentons' Expenses*

Appellant Meridian next contends that the district court erred in upholding the IRS's disallowance of certain business expenses. Ordinary and necessary business expenses are deductible. 26 U.S.C. § 162. The district court, however, determined that Meridian had failed to meet its burden of substantiating the disputed travel and entertainment expenses as required under § 274 of the Internal Revenue Code. 26 U.S.C. § 274. The district court also ruled that the evidence failed to establish that the travel expenses of Lenton's wife, Colleen, were permissible corporate deductions.

### A.

Section 274(d) provides that no deduction shall be allowed:

(1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home),

(2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or

(3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift.

26 U.S.C. § 274.

■ Absent substantiation of an element of section 274(d) (date, place, amount, business purpose, and business relationship), the deduction for entertainment expenses is to be disallowed. *Dowell v. United States,* 522 F.2d 708, 714 (5th Cir.1975), *cert. denied,* 426 U.S. 920, 96 S.Ct. 2626, 49 L.Ed.2d 374 (1976). *See also Berkley Machine Works & Foundry Co. v. Commissioner,* 623 F.2d 898, 906 (4th Cir.), (same) *cert. denied* 449 U.S. 919, 101 S.Ct. 317, 66 L.Ed.2d 147 (1980); *Lewis v. Commissioner,* 560 F.2d 973, 977

---

**4.** *See* note 1.

(9th Cir.1977) (entertainment expenses must meet substantiation requirements).

Treasury Regulation § 1.274–5(c) (1975) provides two methods of substantiating each element of an expenditure. Each expenditure may be established through adequate records or by the taxpayer's own detailed statements containing specific information plus any corroborative evidence. *Dowell*, 522 F.2d at 712–713 (citing Treas. Reg. 1.274–5(c)(3)(i) and (ii)).

Under Treasury Regulation 1.274–5(c)(2) adequate records include an account book, diary, or other documentary evidence sufficient to prove every element of substantiation required by section 274. The regulation further requires that the recording of an element of an expenditure must be made at or near the time of expenditure, when the taxpayer "has full present knowledge of each element of the expenditure." Treas. Reg. § 1.274–5(c)(2)(ii)(a) (1975).

To constitute an adequate record a written statement of the business purpose is generally required, although the degree of substantiation may vary depending on the surrounding facts and circumstance. *Id.* at § 1.274–5(c)(2)(ii)(b). Where the requirements for adequate records cannot be met, and the taxpayer relies on his or her own detailed statement, sufficient corroborating evidence must be offered. *Id.* at § 1.245(c)(3)(ii). If the element to be established is business purpose or business relationship, corroboration may be by circumstantial evidence. Treas.Reg. 1.274–5(c)(3)(ii) (1975). If, however:

> such element is the description of a gift, or the cost, time, place, or date of an expenditure, the corroborative evidence shall be direct evidence, such as a statement in writing or the oral testimony of persons entertained or other witness setting forth detailed information about such element, or the documentary evidence [consisting of adequate records].

*Id.*

Meridian first contends that by producing accounting records establishing the date, the amount, and the payee for various expenditures, they substantially complied with

section 274. Relying on *Caratan v. Commissioner*, 442 F.2d 606, 608 (9th Cir.1971) Meridian asserts that since the IRS did not rebut this evidence, judgment should have been in Meridian's favor.

Meridian's reliance on *Caratan* is misplaced. There, this court stated that *if* appropriate evidence is introduced by the taxpayer sufficient to support a finding contrary to the IRS, the presumption is overcome. Here, however, the district court concluded that Meridian failed to introduce sufficient evidence as to the business purpose of the disallowed deductions. The issue, therefore, is whether Meridian met this "heavy burden to substantiate *each* element of *every* deducted item of expense." *Berkley Machine Works*, 623 F.2d at 906 (emphasis in original); *Dowell*, 522 F.2d at 714; *see also Paal v. Commissioner*, 450 F.2d 1108, 1109 (9th Cir.1971) (the burden of proof as to a deduction is on the taxpayer).

Meridian, the plaintiff taxpayer, has the burden of persuasion, which requires a showing of "the merits of its claim by at least a preponderance of the evidence." *Rockwell v. Commissioner*, 512 F.2d 882, 885 (9th Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975). As we explained in *Rockwell*, the presumption in favor of the Commissioner "is a procedural device which requires the taxpayer to come forward with enough evidence to support a finding contrary to the Commissioner's determination." *Id.* (citing *Caratan v. Commissioner*, 442 F.2d 606, 608 (9th Cir.1971). After satisfying this procedural burden of rebutting the presumption, "the taxpayer must still carry [the] ultimate burden of proof or persuasion." *Id.* (citations omitted).

Even though the accounting records do not contain a statement of business purpose, Meridian argues that certain vouchers prepared by Lenton for reimbursement by Meridian are adequate records of a business purpose. The vouchers contain notes discernible only by Lenton; consequently, for purposes of the tax audit, he prepared an

addendum describing the notes written on the vouchers. Meridian does not contend that the addendum was made at or near the time of the expense, but rather that it corroborates the notes which were made at the time of the expenditure.

██ The district court rejected the addendum to the voucher because it failed to show the origins of the expenses and to explain specifically the individual expenses. There were no bills, receipts, or diary prepared at or near the time the expense was submitted. The district court's determination as to whether the taxpayer has presented persuasive proof that the substantiation requirements of section 274 have been met is a factual one reviewable under the clearly erroneous standard. *Paal v. Commissioner,* 450 F.2d 1108, 1110 (9th Cir.1971).

In *Paal,* this court upheld the tax court's ruling that a diary was insufficient to corroborate the taxpayer's testimony. The diary contained notes recorded five or six years later of certain penciled dates unspecified amounts, and abbreviated names. We held that the taxpayer failed to carry his burden because there was no objective evidence and no third party testimony establishing each element required by section 274. Similarly, in *Sanford v. Commissioner,* 412 F.2d 201 (2d Cir.), *cert. denied,* 396 U.S. 841, 90 S.Ct. 104, 24 L.Ed.2d 92 (1969), the court determined that notes made on a calendar in code which required the taxpayer's interpretation, did not meet substantiation requirements absent documentary evidence to supplement these notations.

██ The district court's determination was not clearly erroneous. As the court noted, Meridian's claims for Lenton's expenses were unsupported by receipts or other documentation; only aggregate amounts of charges were offered. The court also deemed Lenton's testimony of general assertions of business purpose as too nonspecific because of the absence of evidence of particular dates, persons, and business relationships relevant to the expenditures.

██ In addition, the court found that letters from guests confirming the fact that they were entertained did not substantiate specific expenditures. The conclusion that such evidence is not sufficient or reliable corroboration is within the court's province as factfinder. In *Berkley Machine Works & Foundry v. Commissioner,* 623 F.2d 898, 907 (9th Cir.), *cert. denied,* 449 U.S. 919, 101 S.Ct. 317, 66 L.Ed.2d 147 (1980), we rejected the corroborative testimony by nine of some 1,000 guests as to 12 of 76 trips because the witnesses could not relate specific business discussions to specific trips. Similarly, in *Dowell,* 522 F.2d at 715–16, the court rejected testimony by witnesses as to periodic business meetings at certain clubs because they could not identify particular dates, or where they ate, or the amount of the bill.

**B.**

Meridian also contends that the travel expenses of Harry Lenton's wife, Colleen, were deductible by Meridian as business expenses. Again, Meridian misconstrues its burden of proof and persuasion.

██ Treas.Reg. § 1.162–2(c) (1975) states that such expenses are not deductible unless it is shown that the spouse's presence on a trip has a bona fide business purpose other than performance of some incidental services. Here, the evidence consists of testimony by Harry and Colleen Lenton. Colleen's testimony established, in the district court's view, that her primary purpose was to socialize with other wives of business associates. She shopped and went sightseeing during the business sessions. The district court (quoting *United States v. Weatherford,* 418 F.2d 895, 897 (9th Cir.1969), determined it was evident that Colleen's function "was to be a socially gracious wife, not a professional woman."

Meridian points to the following evidence as compelling a contrary finding: Harry Lenton's testimony that Colleen's presence substantially increased Harry's effectiveness; a letter from Marion Stillwell, the other 50 percent stockholder, stating that Colleen's accompaniment of Harry benefited Meridian; and Meridian's policy of encouraging wives to travel on business. The district court was not persuaded by this evidence. It resolved the factual issue in

favor of the IRS. The district court's finding must be upheld unless it is clearly erroneous. *United States v. Disney,* 413 F.2d 783, 787 (9th Cir.1969).

The district court in *Disney* found that Mrs. Disney's presence on business trips with her husband enhanced the company image. The court also found that she assisted her husband in his business activities. On appeal, this court concluded that, under the special facts of the case, the district court's finding that Mrs. Disney's travels had a bona fide business purpose was not clearly erroneous. The trial court must determine if the spouse devoted a substantial amount of time serving the interests of the business. The result in each case is dependent on the persuasive quality of the facts presented by the taxpayer. *Id.* at 788. We distinguished cases where there was an inadequate showing of the way in which the wife assisted the husband in fulfilling a business purpose. In *Disney,* the taxpayers made an extensive showing which fully supported the district court's findings.

Here, Meridian's showing failed to persuade the district court. Although Meridian did have a policy of encouraging wives to accompany executives on trips, the district court as the trier of fact concluded that Colleen's primary purpose in traveling was to socialize. Determination of the credibility of witnesses is the exclusive function of the district court. That determination is conclusive in this court. Colleen's testimony did not persuade the district court that a substantial amount of her time was spent promoting Meridian's business. That determination is conclusive in this court.

### III.

The Lentons contend that the district court erred in concluding that the disallowed deductions were constructive dividends. The government concedes that lack of substantiation for deduction by the corporation under section 274, 26 U.S.C. § 274, is not, of itself, grounds for treating reimbursed expenses as constructive dividends to the individual. *Erickson v. Commissioner,* 598 F.2d 525, 531 (9th Cir.1979).

The test for constructive dividends is twofold: the expenses must be nondeductible to the corporation; and they must represent some economic gain, benefit or income to the owner-taxpayer. *Palo Alto Town & Country Village Inc. v. Commissioner,* 565 F.2d 1388, 1391 (9th Cir.1977); *see also Erickson v. Commissioner,* 598 F.2d 525, 531 (9th Cir.1979) (if corporate payments are for taxpayer's personal purposes they are constructive dividends). In *Palo Alto,* this court held that to support a determination that disallowed expenses constitute constructive dividends to the taxpayer, the tax court must find appropriate facts in the record. Because no finding was made as to the economic gain or benefit to the taxpayer this court remanded the action to the tax court for such a finding.

Here, the district court made a specific finding of economic benefit with respect to Colleen's travel expenses. The court indicated, however, that due to the inadequacy of the record, it was impossible to determine whether the disallowed expenses of Harry Lenton were ordinary business expenses or constructive dividends. Thus, the court explained, each expenditure could not be analyzed in detail because effective examination was precluded by a lack of substantiating documents and testimony. Since the reimbursements to Harry Lenton were not clearly shown as necessary and ordinary for business purposes, the court implicitly determined they were for his benefit. The Lentons failed to carry their burden of persuasion before the district court.

### IV.

Without citation to authority Meridian contends that the district court erred in determining that $8,142 paid by Meridian for roofing work at the plant were not currently deductible as an expenditure for repair of a business property.

Section 162, 26 U.S.C. § 162, allows a business deduction for the costs of repairs to property used in trade or business. Section 263, 26 U.S.C. § 263(a), prohibits allowance of business expenses deductions for the costs of permanent improvements to property. Treas.Reg. 1.263(a)–(1)(b) (1975)

defines a permanent improvement as one which adds value to property or prolongs its useful life.

Lenton testified that the money was spent on several structures for remopping, renailing, repair of breaks, and removal of low spots. Lenton also asserted that due to lapse of time he had no records of the expense. The district court was not persuaded that the expenses were for repairs rather than the cost of permanent improvement. We cannot substitute our view of the weight of the evidence for that of the district court.

## CONCLUSION

The district court correctly determined that the assessments were timely. The district court's findings as to the nondeductibility of Meridian's business expenses and the constructive dividend to the Lentons are not clearly erroneous. The district court did not err in concluding that Meridian failed to prove that the roof repair was a deductible business expense rather than a permanent improvement.

The judgment of the district court is AFFIRMED.