130 T.C. No. 18


UNITED STATES TAX COURT


ALAN BECKLEY AND VIRGINIA JOHNSTON BECKLEY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4722-06.               Filed June 30, 2008.


        Petitioner wife lent funds to a corporation in
which petitioner husband was a shareholder.  The
corporation used the borrowed funds to develop a
working model of Web-based video conferencing software.
The corporation, however, had financial problems and
was dissolved, and the working model was transferred to
a second corporation in which petitioner husband was a
shareholder.  In 2001 and 2002, the second corporation
made payments to petitioner wife.  Petitioners treated
a portion of the payments petitioner wife received as
taxable interest income and the balance as nontaxable
repayment of funds petitioner wife lent the first
corporation.  On audit of petitioners' returns,
respondent did not adjust petitioners' treatment of the
payments petitioner wife received from the second
corporation as taxable interest income and as
nontaxable repayment of loan principal, but respondent
also treated 50 percent of the payments petitioner wife
received as taxable constructive distributions to
petitioner husband from the second corporation.

Held: No portion of the payments petitioner wife received from the second corporation are also taxable to petitioner husband as constructive corporate distributions.

Steven M. Cyr, for petitioners.

Wesley F. McNamara, for respondent.

SWIFT, Judge: Respondent determined deficiencies in petitioners' joint Federal income taxes and penalties as follows:

|  |  | Penalty |
| Year | Deficiency | Sec. 6662(a) |
| 2001 | $10,192 | $2,038 |
| 2002 | 7,000 | 1,400 |

The issue for decision is whether 50 percent of interest and loan principal that petitioner Virginia Beckley (Virginia) received in 2001 and 2002 also should be treated as taxable constructive corporate distributions to petitioner Alan Beckley (Alan).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioners resided in Oregon.

On November 14, 1988, Alan and Robert Ebert (Ebert) incorporated Computer Tools, Inc. (CT), as an Oregon corporation for the purpose of developing computer services for graphic designers. Alan served as president of CT, and Ebert served as secretary. Alan and Ebert were each 50-percent shareholders in CT.[1]

During 1988 through 1998, CT often was short of funds for operations and for development of business products, and CT borrowed from Virginia at least $106,834. Using those funds, CT developed a working model of Web-based video conferencing software (working model). Because of management problems, CT was dissolved in 1998.

On March 17, 2000, VirtualDesign.net, Inc. (VDN), was incorporated as a C corporation under Oregon law to succeed to CT's business and to continue developing business products. From VDN's incorporation in 2000 until sometime in 2003, Ebert was chief executive officer (CEO) of and a 50-percent shareholder in

---

[1] The record does not indicate whether CT was incorporated as a C or as an S corporation.

VDN. Alan was a VDN director and shareholder, but the record does not establish Alan's percentage stock ownership interest in VDN.[2]

As VDN CEO, Ebert had sole signing authority over VDN's corporate bank accounts.

In 2000, CT transferred the working model to VDN.[3] Although the working model constituted a valuable asset to VDN, the record does not indicate whether VDN paid CT any cash for the working model.

CT never made any repayments on the $106,834 loan it received from Virginia; and although VDN received the working model from CT, VDN did not execute a written loan assumption agreement with regard to CT's loan repayment obligation to Virginia. Upon CT's dissolution, Virginia did not make a claim against CT for repayment of the funds she lent to CT.

When VDN acquired the working model from CT, Virginia did not treat her loan to CT as a worthless loan, and Virginia did not claim an ownership interest in the working model.

---

[2] Petitioners claim that Alan owned only 1 percent of VDN's stock. Respondent claims that Alan owned 50 percent of VDN's stock.

[3] Under Or. law, after its dissolution in 1998 CT retained the authority to conduct business appropriate to winding up and liquidating its affairs. Or. Rev. Stat. sec. 60.637 (2007).

In 2001 and 2002, Alan was employed by and received wages from VDN. Virginia was not employed by and did not perform any services for VDN.

In 2001 and 2002, VDN had no current or accumulated earnings and profits, and Alan had no tax basis in his VDN stock.

In 2001 and 2002, VDN paid Virginia $95,434 and $70,000, respectively. The parties have stipulated and we find that VDN paid those funds to Virginia as payment on her loan to CT.

In 2003, new management gained control of VDN, and Alan and Ebert were terminated. At a 2003 meeting of VDN's new management, VDN executives stated that they did not believe VDN was obligated to pay any additional funds to Virginia and that VDN would not do so. VDN's new management did not ask Virginia to return any portion of the funds it had paid her in 2001 and 2002.

On a Form 1099-INT, Interest Income, that VDN mailed to Virginia and to respondent in early 2002, VDN characterized $58,600 of the $95,434 that it had paid to Virginia in 2001 as interest. VDN did not report the $36,834 balance on the Form 1099-INT and treated it at the time as a nontaxable repayment of loan principal that did not need to be reported on the Form 1099-INT. VDN did not report any portion of the $95,434 as a corporate distribution to Alan.

On a Form 1099-MISC, Miscellaneous Income, that VDN mailed to Virginia and to respondent in early 2003, VDN reported the $70,000 it had paid to Virginia in 2002 as nonemployee compensation.

No portion of the $95,434 or the $70,000 that VDN paid Virginia in 2001 and 2002 respectively was reported to respondent on a Form 1099-DIV, Dividends and Distributions, as a corporate distribution to Alan.

On its corporate Federal income tax returns for both 2001 and 2002, VDN deducted as nonemployee compensation the $95,434 and the $70,000 it paid to Virginia in each year.  VDN claimed no interest expense deduction with regard to any portion of the funds it paid to Virginia in 2001 and 2002.

Consistent with the Form 1099-INT they received from VDN, on their 2001 joint individual Federal income tax return, petitioners reported $58,600 of the $95,434 Virginia received from VDN in 2001 as interest income, and petitioners treated the balance as a nontaxable repayment of loan principal.

For purposes of their 2002 joint individual Federal income tax return, petitioners treated the $70,000 that Virginia received from VDN in 2002 as a nontaxable repayment of loan principal.  Petitioners reported no interest income with respect to the $70,000 Virginia received from VDN in 2002.

Further, on their 2001 and 2002 joint Federal income tax returns, petitioners reported no corporate distribution from VDN to Alan with respect to the payments Virginia received from VDN.

The schedule below reflects the payments Virginia received from VDN, VDN's treatment of the payments to Virginia on the Forms 1099 VDN mailed to Virginia and to respondent, VDN's treatment of the payments on its corporate Federal income tax returns, and petitioners' treatment of the payments Virginia received from VDN on or for purposes of their joint individual Federal income tax returns:

| Year | Payments Virginia Received | VDN's Forms 1099 | | | VDN's Corporate Fed. Tax Returns | | | Petitioners' Fed. Tax Returns | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Loan Prin. | Loan Int. | Comp. Expense Deduct. | Loan Prin. | Loan Int. | Comp. Expense Deduct. | Loan Prin. | Loan Int. | Comp. Income |
| 2001 | $95,434 | $36,834 | $58,600 | -- | -- | -- | $95,434 | $36,834 | $58,600 | -- |
| 2002 | 70,000 | -- | -- | $70,000 | -- | -- | 70,000 | 70,000 | -- | -- |

On audit of VDN's returns for 2001 and 2002, respondent disallowed the above compensation expense deductions claimed by VDN, and respondent determined that the total payments VDN made to Virginia in 2001 and in 2002 constituted nondeductible constructive distributions to Alan and to Ebert--50 percent to Alan and 50 percent to Ebert.

On audit of petitioners's returns, respondent did not adjust the manner in which petitioners on their joint Federal income tax returns for 2001 and 2002 reported the payments Virginia received from VDN (i.e., for 2001 $58,600 of interest income and $36,834

of loan principal, and for 2002 no interest income).  Respondent, however, treated one-half of the payments Virginia received from VDN (i.e., $47,717 in 2001 and $35,000 in 2002) also as corporate distributions taxable as capital gain to Alan.

Under respondent's audit theory, VDN's payments to Virginia on her loan to CT were made without any legal obligation to do so and only on the basis of a personal moral obligation of Alan and Ebert to repay Virginia.  Accordingly, respondent concludes (1) that with respect to the payments VDN made to Virginia no deduction was allowable to VDN (i.e., neither a compensation expense deduction nor an interest expense deduction) and (2) that although the payments Virginia received represented to Virginia taxable interest income and nontaxable repayment of loan principal, they also represented to Alan and to Ebert taxable constructive corporate distributions.[4]

OPINION

Where corporations pay personal expenses of shareholders, the shareholders may be treated as having received constructive distributions to the extent of the value thereof to the shareholders.  Meridian Wood Prods. Co. v. United States, 725 F.2d 1183, 1191 (9th Cir. 1984); Falsetti v. Commissioner, 85

---

[4] The record does not indicate whether respondent actually audited Ebert's returns and charged Ebert with constructive corporate distributions with regard to any portion of the payments VDN made to Virginia.

T.C. 332, 356-357 (1985); Magnon v. Commissioner, 73 T.C. 980, 993-994 (1980); Smith v. Commissioner, T.C. Memo. 1995-410. Shareholders may be charged with constructive distributions even though the corporate payments are made to third parties and not directly to the shareholders. Broad v. Commissioner, T.C. Memo. 1990-317; Hufnagle v. Commissioner, T.C. Memo. 1986-119; Paoli v. Commissioner, T.C. Memo. 1985-196.

As stated, respondent made no adjustment to Virginia's taxable income with respect to the payments Virginia received from VDN; and respondent acknowledges that if CT rather than VDN had made the payments to Virginia, petitioners' reporting thereof on their 2001 and 2002 joint Federal income tax returns would be accepted without additional adjustment.

The facts before us do not support respondent's theory that VDN's payments to Virginia were made to satisfy only personal moral obligations of Alan and of Ebert.

Although VDN did not execute a written loan assumption agreement, the facts establish that VDN effectively purchased the working model from CT, that VDN assumed at least part of CT's obligation to repay Virginia's loan to CT, and that VDN's payments to Virginia related thereto. VDN received the working model CT had developed with the funds borrowed from Virginia. VDN made the payments to Virginia as payment on Virginia's loan to CT. For 2001, VDN reported to Virginia and to respondent that

the payments represented interest and principal on Virginia's loan.

HJ Builders, Inc. v. Commissioner, T.C. Memo. 2006-278, illustrates a typical constructive corporate distribution to a shareholder. In HJ Builders, Inc., a corporation made lease payments on an automobile used by the wife of the owner of the corporation. The lease payments were treated as constructive corporate distributions to the shareholder husband. The wife who used the corporate automobile had no creditor or employee relationship with the corporation which would otherwise explain the lease payments.

In contrast, the payments herein were made by VDN to Virginia in connection with the precedent creditor relationship Virginia had with CT, to which VDN at least in part succeeded. The payments herein are explained by that financial relationship. The facts before us do not justify a layer of taxation to petitioners with regard to the VDN payments Virginia received from VDN beyond the interest income that petitioners reported.

In his posttrial brief, respondent argues for the first time that even if VDN had agreed to repay Virginia funds CT borrowed from her, because there was no written agreement relating to that obligation, under Oregon's statute of frauds VDN's obligation would not be enforceable.

Generally, under Oregon's statute of frauds an agreement to be responsible for or to assume a debt obligation of another will be treated as unenforceable if the agreement is not evidenced by a writing.  Or. Rev. Stat. sec. 41.580(1)(b) (2007).  However, an agreement to assume a debt obligation of another may be excepted from Oregon's statute of frauds and may be enforced if assumption of the debt obligation was part of a purchase of the debtor's property.  Sandgren v. Cain Lumber Co., 264 P. 865, 866 (Or. 1928); Feldman v. McGuire, 55 P. 872, 873 (Or. 1899).

Further, part performance--conduct between the parties that corroborates the existence of an oral agreement--may cause an Oregon court to enforce an oral agreement if unjust enrichment would occur if the oral agreement were not enforced.  Tucker v. Or. Aero, Inc., 474 F. Supp. 2d 1192, 1215 (D. Or. 2007) (oral agreement to make royalty payments); Golden v. Golden, 541 P.2d 1397 (Or. 1975) (oral agreement for sale of home).

Although no written agreement existed reflecting VDN's obligation to repay Virginia, VDN's conduct in actually making payments to Virginia, which related to Virginia's loan to CT and to CT's transfer of the working model to VDN, establish the loan repayment character of the payments and the principal and interest nature thereof.

- 12 -

In addition, the Form 1099-INT that VDN mailed to Virginia and to respondent for 2001 reflected that $58,600 represented interest on a loan.[5]

When VDN acquired the working model from CT, the development of which had been made possible by the funds Virginia lent to CT, VDN received the benefit of Virginia's loan, and VDN would be unjustly enriched if VDN did not repay the loan.

For Federal income tax purposes, the Oregon statute of frauds does not prevent us from concluding that the funds Virginia received from VDN in 2001 and 2002 constituted nothing more than interest and repayment of loan principal.  No portion of the funds Virginia received from VDN should be treated as constructive corporate distributions and taxed as capital gain to Alan.

The penalties respondent determined are moot.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[5] VDN's reporting on its 2001 and 2002 Federal income tax returns of the payments to Virginia as nonemployee compensation appears to have been a self-serving attempt by VDN to deduct the full amounts paid to Virginia.