T.C. Memo. 1997-562


UNITED STATES TAX COURT


MOHAN ROY, M.D., INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

MOHAN AND VIMAL ROY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 6966-96, 8728-96.[1]     Filed December 23, 1997.


Mohan Roy (an officer), for petitioner in docket No.
6966-96.

Mohan and Vimal Roy, pro sese in docket No. 8728-96.

Edwin A. Herrera, for respondent.

_____

[1]     These cases were consolidated for purposes of trial,
briefing, and opinion.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, Judge: Respondent determined the following deficiencies, additions, and penalties with respect to petitioners' Federal income taxes:

Mohan Roy, M.D., Inc., Docket No. 6966-96:

|  |  | Additions to Tax & Penalties | |
|  |  | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6662 |
| 1991 | $20,613 | --- | $4,123 |
| 1992 | 9,060 | $3,967 | --- |
| 1993 | 8,933 | --- | 1,787 |
| 1994 | 14,535 | --- | 2,907 |

Mohan and Vimal Roy, Docket No. 8728-96:

|  |  | Penalties |
|  |  | Sec. |
| Year | Deficiency | 6662 |
| 1991 | $137,927 | $27,585 |
| 1992 | 62,449 | 12,490 |
| 1993 | 218,464 | 43,693 |
| 1994 | 48,036 | 9,607 |

These consolidated cases involve two physicians, Mohan and Vimal Roy (hereinafter sometimes referred to as the Roys or as the individual petitioners), and their professional corporation, Mohan Roy, M.D., Inc. (hereinafter referred to either as Roy, Inc. or the corporate petitioner). During the years in issue, Roy, Inc. owned or leased two luxury automobiles, a 1990 Silver Spur II Rolls Royce and a Mercedes Benz S-500.

After concessions by respondent and petitioners, the primary issue that remains concerns the Rolls Royce automobile.

Specifically, we must determine (1) with respect to the corporate petitioner, whether the expenses associated with the Rolls Royce are deductible,[2] and (2) with respect to the individual petitioners, whether the use of the Rolls Royce by Mohan Roy constitutes a constructive dividend. In addition, we must determine whether the corporate and individual petitioners are liable for the accuracy-related penalty pursuant to section 6662.

All section references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

At the time of the filing of the petitions, Roy, Inc.'s principal place of business was located in Anaheim, California, and Mohan and Vimal Roy, husband and wife, resided in Newport Beach, California.

Mohan Roy is a cardiovascular surgeon; Vimal Roy is an anesthesiologist. The Roys conduct their respective medical

---

[2] The corporate petitioner also raises as an issue its entitlement to alter its depreciation method under the Modified Accelerated Cost Recovery System (MACRS) with respect to the Rolls Royce. Because we hold that the corporate petitioner failed to prove its entitlement to any deduction for the Rolls Royce expenses, we need not decide whether it can change depreciation methods.

practices through the corporate petitioner, a California corporation. The stock of Roy, Inc. is owned 50 percent by Mohan Roy and 50 percent by Vimal Roy.

During the years in issue, Mohan Roy performed hundreds of open-heart surgical operations at four different hospitals in Orange County, California; namely at Fountain Valley Medical Center, Anaheim Memorial Hospital, Western Medical Center, and La Mirada Hospital. Besides open-heart surgeries, he performed vascular and thoracic surgeries at six other hospitals. In the course of operative and postoperative management of patients, he had to travel to and between the various hospitals. Mohan Roy worked between 13 and 14 hours a day, approximately 300 days a year, and traveled approximately 60-100 miles a day for business.

During the years in issue, Vimal Roy performed medical services at three different hospitals, namely at Fountain Valley Medical Center, Anaheim Memorial Hospital, and Newport Surgicenter. She traveled approximately 100 miles a week, 50 weeks a year, for business.

From the corporate office of Roy, Inc., Fountain Valley Medical Center is approximately 10 miles, Western Medical Center is approximately 5 miles, and La Mirada Hospital is approximately 20 miles. The corporate office of Roy, Inc. is next to Anaheim Memorial Hospital. The distance between the Roys' residence in Newport Beach to the corporate office of Roy, Inc., is

approximately 17 miles.  The record does not reveal the distance between the corporate office of Roy, Inc., and the other hospitals to which Mohan Roy traveled.

During the years in issue, Roy, Inc. owned a 1990 Silver Spur II Rolls Royce.  It also owned a 1988 Mercedes Benz S-500 until 1993, at which time that automobile was traded in connection with the corporation's leasing a new Mercedes Benz S-500.

Because they worked at different hospitals at different times, the Roys were not able to travel together.  During the years in issue, Vimal Roy generally drove the Mercedes Benz S-500.  The parties agree that the Roys' personal use of the Mercedes Benz S-500 owned by Roy, Inc., during each of the years in issue was 28 percent and that the individual petitioners received constructive dividends as a result of such use during each of the years in issue.

The Roys personally owned three automobiles:  A 1990 Lexus 400, a Range Rover, and a General Motors pickup truck.  The Range Rover was insured under Roy, Inc.'s policy but was primarily used by the Roys' son who was in medical school.[3]

---

[3] The purpose of having the Range Rover as well as the Rolls Royce and two other vehicles on Roy, Inc.'s insurance policy was to obtain a multiple-car discount on the premiums.

Roy, Inc. purportedly acquired the Rolls Royce[4] as a promotional tool to obtain referral business from cardiologists and hospitals. However, because of the downturn in the economy during the early 1990's, it was determined that it would be inappropriate to "showcase the Rolls Royce" while seeking referrals from doctors who had declining income. Consequently, the Roys decided that Roy, Inc. should dispose of the Rolls Royce, although the corporate petitioner did not do so during the years in issue.

The Rolls Royce was driven sparingly by Mohan Roy during the years in issue. The odometer readings on the Rolls Royce on various dates were as follows:

| Date | Odometer Reading |
|------|------------------|
| July 21, 1990 | 150 |
| Oct. 1, 1991 | 2,023 |
| July 13, 1993 | 4,581 |
| July 22, 1994 | 5,152 |
| Nov. 17, 1994 | 5,226 |

Occasionally Mohan Roy used the Rolls Royce for commuting to work from home, attending hospitals to visit patients or perform surgeries, or having the car serviced (twice per year) or generally maintained. When not in use, the Rolls Royce was garaged at the Roys' residence.

Mohan Roy generally drove the Lexus 400 to commute to work and to perform medical services. The tax returns for the individual

---

[4] The Rolls Royce was purchased for $159,837.19, which was paid in part by trading in a 1979 Rolls Royce and receiving a $38,000 credit.

petitioners do not indicate that any automobile expenses were claimed for business use. The record does not reveal whether the Roys were reimbursed by Roy, Inc. for using their personal automobiles for business use.

Roy, Inc. reported gross income on Form 1120, U.S. Corporation Income Tax Return, of $2,468,996 for 1991, $1,882,154 for 1992, $1,423,110 for 1993, and $1,430,828 for 1994. Roy, Inc. paid and deducted automobile expenses (insurance, vehicle registration fees, maintenance and repair expenses, and gasoline) relating to the Rolls Royce as follows:

| Year | Automobile Expenses |
|------|---------------------|
| 1991 | $5,157.00 |
| 1992 | 4,992.80 |
| 1993 | 4,546.80 |
| 1994 | 4,034.40 |

Roy, Inc. reported depreciation expense deductions using the double declining balance method under the Modified Accelerated Cost Recovery System (MACRS) for the Rolls Royce in the following amounts:

| Year | Depreciation Expenses |
|------|-----------------------|
| 1991 | $4,200 |
| 1992 | 2,550 |
| 1993 | 1,475 |
| 1994 | 1,475 |

The Roys filed jointly and reported adjusted gross income on Form 1040, U.S. Individual Income Tax Return, of $1,397,422 for 1991, $906,187 for 1992, $164,377 for 1993, and $503,599 for 1994.

They did not report as income the value of their use of the Rolls Royce during the years in issue.

OPINION

Issue 1. Roy, Inc.'s Rolls Royce Expenses

The first issue for decision is whether the corporate petitioner is entitled to deductions pursuant to section 162 for the expenses incurred for the use and operation of the Rolls Royce during the years in issue. Roy, Inc. claims that the expenses were entirely for business purposes and that they were "ordinary and necessary". Respondent disagrees, asserting that not only did Roy, Inc. fail to substantiate the business use of the Rolls Royce but that it also failed to show that the expenses associated with the Rolls Royce were ordinary and necessary.

Section 162 allows as a deduction all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. An expense is ordinary if it is common or frequently occurs in the context of the particular business involved. Deputy v. duPont, 308 U.S. 488, 495 (1940). An expense is necessary if it is appropriate and helpful to the taxpayer's trade or business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943). The taxpayer must show that there is a proximate relationship between the claimed expense and the operation of the taxpayer's trade or business. Henry v. Commissioner, 36 T.C. 879, 884 (1961).

The corporate petitioner claims that the Rolls Royce was an ordinary and necessary tool for obtaining business referrals. In this regard, Mohan Roy testified that he knew of many other doctors who drove Rolls Royces for a similar purpose. As evidence of the promotional value of the Rolls Royce, the individual petitioners point to Roy, Inc.'s gross income during the years in issue (ranging from $1.4 million to $2.4 million). Respondent counters by noting that Mohan Roy decided to limit his use of the Rolls Royce during the years in issue to avoid discouraging patient referrals due to the declining economy.

The instant case is similar to Connelly v. Commissioner, T.C. Memo. 1994-436, affd. without published opinion 99 F.3d 1154 (11th Cir. 1996). In Connelly, a plastic surgeon was the sole officer and shareholder of a medical corporation for which he provided the medical services. Allegedly to promote and advertise his services, the corporation leased a Rolls Royce Silver Shadow which the shareholder purportedly used to attend medical conventions or for other business purposes. We held in Connelly that the medical corporation was not entitled to deduct the Rolls Royce expenses because the corporation failed to show a proximate relationship between the expenses paid and the promotion of the medical practice. We therein stated:

> We believe that the proposition that the leasing of the Rolls Royce enhances petitioner's skill, usefulness, or reputation as a physician is at best, dubious. In addition, petitioners have failed to offer any evidence

of any patients who were attracted to * * * [the] medical
practice by virtue of the leasing of the Rolls Royce.

Id.

With regard to the instant case, the corporate petitioner has not established that the Rolls Royce resulted in patient referrals. In this regard, there was no testimony from any referring physician that business was sent to Roy, Inc. because of the Rolls Royce.[5] See Henry v. Commissioner, supra at 884. Additionally, Mohan Roy's testimony that he thought the Rolls Royce would discourage patient referrals and thus sought to sell it at an appropriate time undermines any claim that the automobile was an ordinary and necessary expense to Roy, Inc. The limited use of the Rolls Royce (about 5,000 miles during 4 years) and the fact that the vehicle was principally garaged at the Roys' personal residence also defeats the corporate petitioner's claim that the expenses were ordinary and necessary.

Further, the corporate petitioner has not substantiated the business use of the Rolls Royce, pursuant to section 274(d), for the years in issue. To satisfy the substantiation requirements, taxpayers must produce records that detail the use of automobiles for business purposes through mileage logs or other business records which corroborate the taxpayers' own testimony. Sec.

---

[5] Roy, Inc.'s former office manager testified that she was unaware of any patients referred to Roy, Inc. because of Mohan Roy's use of the Rolls Royce.

1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Here, that was not done.

We are mindful that the individual petitioners concede that Mohan Roy occasionally used the Rolls Royce to commute to work, a nondeductible personal expense under section 262. See Fausner v. Commissioner, 413 U.S. 838 (1973); Commissioner v. Flowers, 326 U.S. 465 (1946). We are also mindful that the insurance policy renewal notice indicates that the Rolls Royce is for "pleasure use or under 30 miles weekly to and from work or school".

Petitioners request us to consider certain Internal Revenue Service (IRS) audit papers which they claim indicate that the revenue agent was willing to allow an 80-percent business use of the Rolls Royce. We will not consider what the agent might have done to settle this case because of our well-established rule that this Court generally will not look behind the notice of deficiency and consider actions or determinations of a revenue agent. See Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (1974).

To conclude, we hold that the corporate petitioner has failed to substantiate that the expenses paid or incurred relating to the Rolls Royce were ordinary and necessary business expenses. Consequently, none of the Rolls Royce expenses are deductible by Roy, Inc.

Issue 2. Constructive Dividends

The second issue for decision is whether the individual petitioners must include in income as a constructive dividend the value of Mohan Roy's use of the Rolls Royce. The individual petitioners contend that the Rolls Royce was used solely for business purposes, and thus they should not realize income from Mohan Roy's sparse use of the Rolls Royce.

Distributions of property from a corporation to a shareholder with respect to its stock constitute dividends to the extent of the corporation's earnings and profits. Secs. 301(c), 316(a). Dividends may be formally declared or they may be constructive. Noble v. Commissioner, 368 F.2d 439, 442 (9th Cir. 1966), affg. T.C. Memo. 1965-84. Nondeductible expenditures made by a corporation for the personal benefit of a shareholder constitute a constructive dividend to that shareholder. Meridian Wood Prods. Co. v. United States, 725 F.2d 1183, 1191 (9th Cir. 1984); Falsetti v. Commissioner, 85 T.C. 332, 356-358 (1985); Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650, 663 (1962). Dividends are includable in the shareholder's gross income. Sec. 61(a)(7). In the instant case, as discussed supra, we have found that the expenses associated with the Rolls Royce are not ordinary

and necessary business expenses (nor did Roy, Inc. substantiate a business purpose for such expenses).

Even if, as the individual petitioners contend, some business purpose existed for Mohan Roy's use of the Rolls Royce (such as driving to hospitals to visit patients or perform surgeries), we cannot find any evidence in the record to support an estimate of the amount of business use as opposed to personal use. Cf. Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 744 (1973). Moreover, Mohan Roy received a personal and economic benefit from driving a luxury automobile for commuting purposes. Cf. Erickson v. Commissioner, 598 F.2d 525, 530-531 (9th Cir. 1979), affg. in part and revg. in part T.C. Memo. 1976-147. Consequently, we hold that the individual petitioners received constructive dividends from Roy, Inc. as a result of Mohan Roy's use of the Rolls Royce automobile. See Connelly v. Commissioner, T.C. Memo. 1994-436; Royce C. McDougal, M.D., Inc. v. Commissioner, T.C. Memo. 1985-64; William N. Smith, M.D., P.C. v. Commissioner, T.C. Memo. 1983-426; Tyson v. Commissioner, T.C. Memo. 1979-122.

We must next decide the amount of constructive dividends received by the individual petitioners. Mohan Roy testified that

the fair rental value of the Rolls Royce was $85 to $98 per day.[6] However, his testimony in this regard was self-serving and uncorroborated, and he failed to specify how many days he drove the automobile. Likewise, respondent failed to present any evidence as to the fair rental value of the Rolls Royce. In this regard, at trial, we rejected (as not relevant) the testimony of respondent's expert witness regarding the fair rental value of a Rolls Royce in 1997 because the years in issue were 1991 through 1994. Thus, the record is completely devoid of the fair market value of the Rolls Royce for the years at issue. Therefore, we will rely on the actual operating expenses paid by the corporate petitioner to maintain the Rolls Royce to determine the amount of constructive dividends paid to the individual petitioners. See Ross v. Commissioner, T.C. Memo. 1990-23; see also Cirelli v. Commissioner, 82 T.C. 335, 352 (1984); Tyson v. Commissioner, supra.

Mohan Roy testified that the insurance premiums paid by Roy, Inc. with respect to the Rolls Royce were included in his salary as a Roy, Inc. employee. The accountant who prepared the 1994 Federal income tax returns for both Roy, Inc. and the Roys also testified that insurance premiums paid by Roy, Inc. were included in Mohan

---

[6] Mohan Roy reached this figure by estimating the annual cost of a 3-year lease on a $188,000 1997 Rolls Royce and dividing that by 365 days.

Roy's salary. We find the testimony of Mohan Roy and the accountant credible on this point. Thus, we hold that the constructive dividends do not include the amount of insurance premiums paid by Roy, Inc. for 1994 only (there was no corroboration with respect to the other years in issue).[7]

Neither Mohan Roy nor his accountant testified with respect to any other operating expenses (vehicle registration fees, maintenance and repairs, and gasoline) paid by Roy, Inc. relating to the Rolls Royce. Respondent conceded on brief that the depreciation expenses did not constitute constructive dividends to the Roys.

On the basis of the record before us, we hold that the amount of constructive dividends paid by Roy, Inc. to the individual petitioners is the amount of operating expenses paid by Roy, Inc. for the use of the Rolls Royce during the years in issue, excluding depreciation, and less the insurance premiums paid in 1994.

---

[7] No evidence was introduced to show that the 1994 insurance premium payments were meant to serve as compensation even though we found they were included in Mohan Roy's salary. The payments are deductible only if the corporation intended them to be compensation for services rendered. See Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1340-1342 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974); see also Goldstein v. Commissioner, 298 F.2d 562, 566 (9th Cir. 1962), affg. T.C. Memo. 1960-276. As a result, Roy, Inc. is not entitled to deduct the amount of the 1994 insurance premium payments as reasonable compensation under sec. 162.

Because no evidence was introduced relating to the earnings and profits of Roy, Inc., the entire amount of the expenses paid by Roy, Inc. constitutes constructive dividends. Rule 142(a).

## Issue 3. Accuracy-Related Penalties

The final issue for decision is whether the corporate and/or the individual petitioners are liable for the accuracy-related penalty, pursuant to section 6662, for negligence or disregard of rules or regulations or substantial understatement of tax. Respondent determined a penalty for the corporate petitioner for 1991, 1993, and 1994, and a penalty for the individual petitioners for each of the years in issue. Petitioners generally assert a reasonable cause defense.

Section 6662 imposes a penalty equal to 20 percent of the amount of the underpayment attributable to negligence or disregard of rules or regulations or substantial understatement of tax. "Negligence" means any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and "disregard" means any careless, reckless, or intentional disregard. Sec. 6662(c). A substantial understatement of tax means an understatement of tax which exceeds the greater of 10 percent of the tax required to be shown on the tax return or $5,000. Sec. 6662(d)(1)(A).

No accuracy-related penalty is imposed with respect to any portion of the understatement as to which the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1).

At trial, when questioned about discrepancies between figures in the tax returns and the amounts the parties stipulated, Mohan Roy claimed that he relied on his accountant to prepare the Federal tax returns--presumably referring to both the corporate and personal returns.  However, reliance on an accountant to prepare tax returns is not sufficient by itself to establish reasonable cause.  See Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987).  The taxpayer must also show that: (1) The taxpayer provided the return preparer with complete and accurate information from which the tax return could be properly prepared; (2) an incorrect return was the result of the preparer's mistakes; and (3) the taxpayer in good faith relied on the advice of a competent tax return preparer.  Jackson v. Commissioner, 86 T.C. 492, 539-540 (1986), affd. 864 F.2d 1521 (10th Cir. 1989); Hotel Continental, Inc. v. Commissioner, T.C. Memo. 1995-364, affd. without published opinion 113 F.3d 1241 (9th Cir. 1997).

Both the corporate and the individual petitioners have failed to prove that they acted with reasonable cause and in good faith. Rule 142(a). Thus, we hold that the corporate petitioner is liable

for the accuracy-related penalty, pursuant to section 6662, for 1991, 1993, and 1994, and that the individual petitioners are liable for the accuracy-related penalty for each of the years in issue.

To reflect the foregoing and the concessions of the parties,

<u>Decisions will be entered under Rule 155</u>.