William P. **SHANNAHAN** and Saracia L.P. Shannahan, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

No. 96CV1484–J RBB.

United States District Court, S.D. California.

Jan. 8, 1999.

---

Thomas E. Sharkey, McInnis Fitzgerald Rees and Sharkey, San Diego, CA, for plaintiffs.

Henry C. Darmstadter, U.S. Department of Justice, Trial Attorney Tax Division, Washington, DC, U.S. Attorney, U.S. Attorneys Office, Civil Division, San Diego, CA, for USA, defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JONES, District Judge.

This matter comes before the Court on motion for summary judgment by Defendant United States of America ("Government"). The Court has received and considered the Government's motion, Plaintiffs' opposition, and the Government's reply. Pursuant to Local Rule 7.1, the Court found the matter suitable for disposition without oral argument, notified the parties, and took the matter under submission. For the reasons stated below, the Court **GRANTS** the Government's motion for summary judgment.

This case involves a dispute between a tax attorney and the federal government over tax refunds for three years (1991, 1992, and 1993) and an injunction prohibiting the Government from collecting from Plaintiffs tax liabilities for the 1991 calendar year.[1] The Government's motion seeks summary judgment on two grounds.

1. On August 26, 1996, Plaintiffs filed a com- plaint against the United States and asserted

First, the Government argues that the Court lacks subject matter jurisdiction over the tax refund suit for 1991, 1992, and 1993 because Plaintiffs do not meet the jurisdictional requirements for a refund under 28 U.S.C. § 1346(a)(1). Second, the Government claims that under 26 U.S.C. § 7421, Plaintiffs cannot pursue their fourth cause of action to enjoin the Internal Revenue Service ("IRS") from further collection of taxes.

## I. BACKGROUND

Plaintiffs are husband and wife, and Plaintiff William Shannahan is a tax attorney whose change of employment and disputes over compensation with his various employers have motivated Plaintiffs to file amended returns and to claim withholding credits for the calendar years of 1991, 1992, and 1993. For this reason, the Court briefly describes the history of Plaintiff William Shannahan's employment in this section. For the sake of brevity and clarity, the Court further elaborates on the amended returns and credits in the relevant sections rather than in this section.

In 1987, Plaintiff William Shannahan and others formed Shannahan, Fitzgerald, & Flam, ("SS & F"), a professional law corporation. Plaintiff was issued stock in this corporation for a cash equity contribution of $24,500. (Pls. Decl., filed July 24, 1998, at ¶ 41). On July 1, 1990, SS & F surrendered its license to practice law in corporate form and changed its name to SSS Investment Corporation, a California corporation. *Id.* at ¶ 42. On December 30, 1990, Plaintiff William Shannahan sold all of his stock in SSS Investment Corporation for $24,500. *Id.* at ¶ 43.

In 1990 Plaintiff William Shannahan became an employee of Shannahan, Smith & Stipanov, a professional law corporation. *Id.* at ¶ 5. The name of this corporation was changed to Shannahan, Smith, Scalone & Stipanov ("SSSS") on January 1, 1991. *Id.* On September 30, 1991, Plaintiff William Shannahan terminated his employment with SSSS and litigation commenced regarding Plaintiff's right to additional compensation from SSSS. *Id.* at ¶ 6. In December 1993, an arbitrator announced an award to Plaintiffs of $163,355 arising from Plaintiff William Shannahan's litigation with SSSS. *Id.* at ¶ 21.

In November 1991, Plaintiff William Shannahan became an employee of Shannahan, Smith & Dailey ("SS & D"), a professional law corporation. *Id.* at ¶ 13. On October 4, 1992, Plaintiff William Shannahan terminated his employment with SS & D and had discussions with SS & D regarding additional compensation due to Plaintiff. *Id.* at ¶ 14. Later, SS & D was renamed to Smith, Dailey & Eischen ("SD & E") to reflect that Plaintiff William Shannahan was no longer an employee. (Decl. Smith, filed July 23, 1998, at ¶ 7).

## II. STANDARD FOR MOTION FOR SUMMARY JUDGMENT

The Court may grant summary judgment upon a showing that there is "no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." [2] Fed.R.Civ.P. 56(c).

---

the following four causes of action: (1) refund of income taxes in the amount of $196,624 for the calendar year 1991; (2) refund of income taxes in the amount of $15,310 for the calendar year 1992; (3) refund of income taxes in the amount of $14,592 for the calendar year 1993; and (4) preliminary injunction enjoining the Internal Revenue Service ("IRS") from collection of the Plaintiffs' income tax liabilities for the calendar year 1991.

The Government asserts the following two counterclaims: (1) reduction to judgment of an income tax assessment in the amount of $60,865 for the calendar year 1992; and (2) recovery of an erroneous refund of income tax issued to the Plaintiffs for the calendar year 1992 in the amount of $24,994.

**2.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses ....."); *id.* at 327, 106 S.Ct. 2548 ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' ") (citations omitted).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If the nonmoving party will bear the burden of proof at trial, the moving party does not discharge its initial burden simply by making a "conclusory assertion that the nonmoving has no evidence," but must rather demonstrate the absence of a genuine issue by either: (1) submitting proof that would negate an essential element of the nonmovant's claim or defense; or (2) showing the nonmovant's inability to produce sufficient admissible evidence at trial. *Adickes*, 398 U.S. at 157–61, 90 S.Ct. 1598; *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting).

If the moving party meets this initial burden of production, then the burden shifts to the nonmoving party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. To make such a showing the nonmoving party must go beyond the pleadings and designate admissible material facts showing that there is a genuine issue for trial such that a reasonable jury could find in their favor by the appropriate standard of proof. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

To determine if there is a genuine dispute of material facts the Court shall consider all admissible affidavits and supplemental documents submitted in a motion for summary adjudication. *Connick v. Teachers Ins. and Annuity Ass'n*, 784 F.2d 1018, 1020 (9th Cir.), *cert. denied*, 479 U.S. 822, 107 S.Ct. 91, 93 L.Ed.2d 43 (1986). This includes discovery documents such as answers to deposition questions, and interrogatories. FED.R.CIV.P. 56(c). Unless foundational or other evidentiary objections are timely made, however, even inadmissible evidence may be considered by the Court and will support a judgment. *Faulkner v. Fed'n of Preschool and Community Educ. Ctr., Inc.*, 564 F.2d 327, 328 (9th Cir.1977) (per curiam). The Court has no duty to consider proof not specifically directed to its attention. *Schneider v. TRW, Inc.*, 938 F.2d 986, 990 n. 2 (9th Cir.1991).

In determining whether to grant summary judgment, the Court must keep in mind that "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury junctions, not those of a judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Id.*

## III. OBJECTIONS TO EVIDENCE

As an initial matter, the Court must address the objections made by the parties to the evidence provided to the Court for the purposes of deciding this summary judgment motion. The Government objects to the admissibility of evidence provided by Plaintiffs regarding Plaintiffs' belief that SS & D would withhold federal income taxes for 1992 and 1993. Specifically, the Government objects to the memorandum of Jim Eischen, dated October 3, 1992. (Gov't Obj., filed August 14, 1992). The basis for the Government's objection is inadmissible hearsay under Fed.R.Evid. 802. *Id.*

Plaintiffs also filed an "Objection and Opposition to Decl. of Smith and Exhibits" on August 13, 1998 in which Plaintiffs object to the declaration filed by Robert Smith, one of the founding attorneys of SS & D. Plaintiffs argue that the declaration is self-serving and that the contradictions contained within the evidence show that material questions of fact exist in this litigation. Although Plaintiffs' file this document as an "objection," it fails to provide

this Court with any objections as to the admissibility of the evidence under the Fed.R.Evid. or any legal support. As stated above, credibility determinations are not the function of the Court in ruling on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, the Court declines to consider Plaintiffs objection as a bar to its consideration of the facts set forth in Mr. Smith's declaration.

## A. Government's Objection to Mr. Eischen's Memorandum

Since the only objection as to the admissibility of evidence is made with respect to the memo written by Jim Eischen, this is the only objection the Court must address before ruling on the motion itself. The memorandum in question was written by Jim Eischen to William Shannahan on October 3, 1992. This memorandum was written because of Plaintiff William Shannahan's dispute with SS & D over his compensation for the 1992 year. It appears that in September, 1992, Plaintiff William Shannahan was paid $35,000 with no withholdings made by Plaintiff's employer. (Pls. Decl. in Opp., Exh. 1 at p. 2). In the memo, Mr. Eischen determined that SS & D still owed Plaintiff William Shannahan $10,949. *Id.* at p. 2. Then, Mr. Eischen states that he would call Paychex to determine the amount of the withholding for the $35,000 already paid to Plaintiffs in September, 1992 and for the $10,-949.80 still owed to Plaintiffs. *Id.* at p. 5. Plaintiffs argue that this memo supports their contention that SS & D promised to withhold federal income tax from Plaintiffs' 1992 earnings and that Plaintiffs relied upon this representation in filing their tax returns. (Pls. Opp. at 18).

3. Hearsay is defined as an out of court statement offered in evidence to prove the truth of the matter asserted. FED.R.EVID. 801(c).

4. Plaintiffs argue that this memo proves that SS & D was in fact withholding for all amounts of compensation paid to Plaintiff William Shannahan in 1992. (Pls. Opp. at 18). Plaintiffs reach too far. The memo

## B. Analysis

■ Fed.R.Evid. 802 bars hearsay.[3] Whether Mr. Eischen's memo is hearsay and thus barred depends on the purpose of Plaintiffs' reliance on this memo. Plaintiffs offer this memo for two purposes. One objective of using this memo is to prove that SS & D stated it would withhold federal taxes, at least with respect to the $35,000 already paid and the $10,-949.80.[4] This purpose would fall directly into the definition of hearsay and the Court finds no exception to the hearsay rule which could apply to this memo.

■ Plaintiffs also offer the memo to show that their belief that SS & D was withholding federal taxes for all compensation paid during 1992 was reasonable. Although arguably, this purpose for using the memo is not "for the truth of the matter asserted" and rather to prove the Plaintiffs' state of mind, the Court finds that the memo is irrelevant. FED.R.EVID. 401 and 402. As discussed more fully below, the reasonableness of Plaintiffs' belief is immaterial because the only relevant issue is whether an employer *in fact* paid the withholding, not whether a taxpayer believes his employer is withholding. *See Edwards v. Commissioner*, 323 F.2d 751, 752 (9th Cir.1963) (stating that under the Internal Revenue Code and the applicable Treasury Regulation, "a tax credit is to be given a taxpayer for tax *actually withheld* from his wages by his employer.") (emphasis added).

The Court finds that Mr. Eischen's memo is inadmissible hearsay and irrelevant. Therefore, the Court cannot consider this memo in evaluating Defendant's motion for summary judgment.

clearly states that Plaintiffs' employer would withhold the appropriate amounts for the two payments at the heart of the dispute—the $35,000 already paid and the $10,949.80 owed. It does not indicate that Plaintiffs' employer would withhold federal income taxes on any other compensation paid to Plaintiffs that year.

## IV. ANALYSIS

### A. The "full-payment" rule must be met in order for this Court to have jurisdiction over the tax refund action for 1991, 1992, and 1993 (Counts 1, 2, and 3 of the Complaint).

 Defendant challenges this Court's jurisdiction over Plaintiff's suit for refund of income taxes.[5] The party asserting jurisdiction has the burden of establishing that the district court actually does have jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The issue of jurisdiction in a tax refund suit is determined by the facts that existed when the action was filed. *Hutchinson v. United States*, 677 F.2d 1322, 1325–26 (9th Cir. 1982). Therefore, the Court must determine whether Plaintiffs had fully satisfied their tax liability as of August 26, 1996. (Compl.).

 Under 28 U.S.C. § 1346(a)(1), a taxpayer may bring "a civil action against the United States for the recovery of any internal-Revenue tax" that the taxpayer believes was erroneously assessed. In order to file this action in district court, however, the taxpayer must pay the full amount of the contested penalty assessment, and this requirement is known as the "full payment rule." *Thomas v. United States*, 755 F.2d 728, 729 (9th Cir.1985)

(citing *Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958)).[6]

The fundamental issue of Defendant's motion for summary judgment on Plaintiffs first three claims is a relatively simple one—does this Court lack subject matter jurisdiction over the first three claims of Plaintiffs' complaint because Plaintiffs have failed to pay the full amount assessed by the IRS? However, this seemingly clear-cut issue is complicated by the fact that Plaintiffs are attempting to transfer overpayments and credits claimed in amended returns (but never recognized by the IRS) in order to satisfy the full payment rule.

### 1. Calendar year of 1991

### a. Statement of Facts

For the 1991 tax year, Plaintiffs had an assessed deficiency in the amount of $163,952 in tax plus penalties and interest. (*UF:*[7] SS[8] 5; SGI[9] at p. 2). Plaintiffs made a payment of $134,040 toward the 1991 deficiency in December 1995. (*UF:* SS 6; SGI at p. 3). On July 2, 1996, the IRS seized $3.180.12 from Plaintiffs and credited this amount to the 1991 deficiency. (*UF:* SS 7; Decl. Darmstadter, filed May 21, 1998, Exh. B; Pls. Decl., filed July 24, 1998 at 35.[10]). The Government argues that the above numbers show a total payment amount of $137,220.12 ($134,040 +

---

**5.** A district court's lack of jurisdiction over an action may be raised at any stage of the proceeding. *May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1216 (9th Cir.1980).

**6.** Another jurisdictional requirement is that the taxpayer must file a claim for refund which the IRS has either rejected or not acted upon in six months. *Thomas*, 755 F.2d at 729. However, the parties only dispute whether Plaintiffs have met the full-payment rule, not this filing requirement.

**7.** *"UF"* indicates that the fact is undisputed by the parties.

**8.** "SS" refers to the Government's "Separate Statement of Undisputed Facts in Support of Motion for Summary Judgment," filed on May 21, 1998.

**9.** "SGI" refers to the Plaintiffs' "Statement of Genuine Issues in Opposition to Motion for Summary Judgment," filed on July 24, 1998.

**10.** There appears to be two typographical errors in Plaintiffs Declaration, filed July 24, 1998 with respect to the amounts of money seized by the Government. First, in their declaration, Plaintiffs and the Government agree that the IRS seized money from Plaintiffs on July 2, 1996, November 18, 1996. However, the Government's documents reflect amounts different from those stated in Plaintiffs' declaration.

| | Decl. Darmstadter, Exh. B–3: | Decl. Pls. at 35: |
|---|---|---|
| July 2, 1996: | $ 3,180.12 | $ 3,082.80 |
| Nov. 18, 1996: | $10,370 | $10,070 |

The Court adopts the figures as established by the Government's records. Plaintiffs themselves use the Government's figures in

$3,180.12) which is $ 26,731.88 less than the full deficiency amount for 1991. (Gov't Mem. at 6–7).

Plaintiffs make the following four arguments in an attempt to circumvent the full-payment rule: (1) the Government's 1991 assessment is barred by the statute of limitations; (2) overpayments in 1992 and 1993 should be credited to their 1991 deficiency; (3) Plaintiffs' amended return for 1991 reflected an additional withholding credit which should be applied to the 1991 deficiency; and (4) the IRS seizure of money from Plaintiffs after Plaintiffs filed their complaint for a refund should be applied to the 1991 deficiency. The Court addresses each of these arguments in turn.

#### b. Statute of limitations is not a bar to Defendant's action.

Plaintiffs argue that the IRS had to assess the $163,952 tax liability for 1991 by February 29, 1996, pursuant to I.R.C. § 6501(a) and I.R.C. § 6503(a)(1). By assessing the liability on March 6, 1996, Plaintiffs believe that the Government is barred by the statute of limitations from collecting this assessment. (Pl. Opp. at 9). The Government believes that the three year statute of limitation under § 6501 did not expire until March 18, 1996, which would make its March 4, 1996 deficiency assessment timely filed. (Gov't Reply at 3). The Court finds that the Government is correct.

Several statutes in the Internal Revenue Code apply to the Court's determination of whether Defendant is barred from assessing the 1991 deficiency against Plaintiffs. Under I.R.C. § 6501, "the amount of any tax ... shall be assessed within three years after the return was filed." Here, Plaintiffs filed their 1991 tax return on October 21, 1992 [11], and under § 6501, the Government would have until October 21, 1995 to file any assessment for the 1991 calendar year.

This date for filing an assessment is extended under § 6503(a)(1) by suspending the statute of limitations for 150 days from the notice of deficiency.[12] Here, the

---

their opposition. *See* Pls. Opp. at p. 8 (agreeing with the Government's November, 96 figure) and at p. 16 (agreeing with the Government's July and November 1996 figures).

Second, in their declaration, Plaintiffs state that the IRS made a third seizure on January 12, 1996 of $6,030. (Pls. Decl., filed July 24, 1998 at 35). The Government's documents reflect that this amount was $6,730 and was seized on December 12, 1996 rather than January 12, 1996. (Decl.Darmstadter, Exh. B–3). The Court finds that the Government's date and amount are correct. Plaintiffs themselves use the December date and the amount of $6,730 in their opposition. *See* Pls. Opp. at p. 8 and 16.

**11.** Plaintiffs contend that they filed their 1991 return on October 15, 1992. (Pl.'s Decl. in Opp. to Mot. for Summary Judgment, filed July 24, 1998, at ¶ 9). The Court rejects this argument.

Under I.R.C. § 7502, a return is considered filed on the date it is mailed. However, § 7502 "only applies where a document is delivered to the IRS after the last date prescribed for filing." *First Charter Fin. Corp. v. United States,* 669 F.2d 1342, 1346 (9th Cir. 1982). If the return is received within the time prescribed, including extensions of time, then the date on which the I.R.S. receives the

return is the date it is "filed." *Id., United States v. Hanson,* 2 F.3d 942, 946 (9th Cir. 1993).

Plaintiffs provide no evidence that their return was untimely filed. Moreover, Plaintiffs state that they filed their 1991, 1992, and 1993 tax returns after the traditional April 15 deadline pursuant to extension approvals. (Decl. Pls. at ¶¶ 9, 16, and 22). Therefore, the Court declines to use the October 15, 1992 date (the date Plaintiffs mailed their return). The Court assumes that the return was timely filed and § 7502 does not apply, which sets the date of filing for the 1991 return on October 22, 1993.

**12.** The 150 day suspension is derived from the ninety days in which the IRS is not allowed to determine any additional deficiency for the calendar year in which a notice of deficiency is mailed (I.R.C. § 6212) and the sixty additional days allotted under § 6503. Under I.R.C. § 6213(a), a taxpayer has ninety days from the date the Secretary mailed the notice of deficiency to file a petition in the Tax Court for redetermination of the deficiency. During this time, the IRS may not determine any additional deficiency of income tax for the same calendar year as the original notice of deficiency. I.R.C. § 6212(c).

I.R.S. issued a notice of deficiency on October 2, 1995, and one hundred and fifty days added to this date extends the deadline for filing an assessment to February 29, 1996. However, the United States Claims Courts [13] recognize that the days remaining in the limitation period should be "tacked on" to the 150 day period. *Fulgoni v. United States,* 23 Cl.Ct. 119, 123, n. 7 (Cl.Ct.1991) (citing *Olds & Whipple v. United States,* 86 Ct.Cl. 705, 716, 22 F.Supp. 809 (1938)); *Ramirez v. United States,* 210 Ct.Cl. 537, 538 F.2d 888, 892–93 (Cl.Ct.1976).

The Court adopts the view of the Claims Courts. Here, nineteen days remained in the statute of limitations period (October 2, 1995 to October 21, 1995). Adding nineteen days to February 29, 1996 sets the deadline for the Government to file an assessment for the 1991 calendar year at March 18, 1996. The parties do not dispute that the deficiency for 1991 was assessed on March 4, 1996 in an amount of $163,952. (*UF:* SS ¶ 5; SGI at p. 2). Since the Government filed its assessment of tax liability for the 1991 year fourteen days before its March 18, 1996 deadline, § 6501(a) does not bar this assessment.

### c. The Court finds that Plaintiffs cannot use their 1992 and 1993 overpayments as credits towards their 1991 deficiency because the credits have not been recognized by the IRS.

#### i. Statement of Facts

Plaintiffs claim that the they were entitled to deductions in 1992 and 1993 for legal, accounting and other expenses in connection with the SSSS arbitration over compensation due to Plaintiff William Shannahan. (Decl. Pls. at ¶ 30). These deductions would reduce their adjusted gross incomes for those years and result in a lower tax assessment for those years. In order to reflect these deductions, Plaintiffs filed a Form 1040X (amended U.S. Income Tax Return) for 1992 and 1993. On the amended tax return for 1992, Plaintiffs calculated that they had overpaid their 1992 taxes by $15,310 after accounting for all of the deductions for professional fees associated with the SSSS arbitration. (Pls. Compl., Exh. C; Decl. Pls. at ¶ 32). On the amended tax return for 1993, Plaintiffs calculated that after deducting for professional fees, they had overpaid their 1993 taxes by $29,592. (Pls. Compl., Exh. D; Decl. Pls. at ¶ 32). Plaintiffs requested, by letter dated November 10, 1995, that the IRS apply their alleged $15,310 overpayment from 1992 to their 1991 deficiency. (Decl. Pls. at ¶ 32; Decl. Pls., Exh. 3). In addition, in this letter and on their 1993 amended return, Plaintiffs requested that $14,592 of the $29,592 overpayment from 1993 be applied to the 1991 deficiency and that the remainder be applied to their 1994 taxes. *Id.;* Pls. Compl. at Exh. D. By August 25, 1996, when Plaintiffs filed this action, the IRS had never granted or denied Plaintiffs requests for the credits. (Decl. Pls. at ¶ 36).

If these amounts are added with the $134,040 payment made by Plaintiffs after they received the notice of deficiency, (SS 6; SGI at ¶ 2) and credited towards the 1991 deficiency, Plaintiff's believe this amount is a full payment of the 1991 deficiency. The Government contends that Plaintiffs cannot rely upon overpayments reflected on amended returns to satisfy the full payment rule because the IRS is not obligated to accept an amended return. (Gov't Mem. at 8).

#### ii. Discussion

 Generally, the IRS has discretion in whether to apply an overpayment as a credit to any tax liability. 26 U.S.C. §§ 6402(a) and 7422(d).[14] Due to the IRS'

---

13. The United States Claims Court, like the United States District Courts, may hear tax refund suits if certain jurisdictional requirements are met. GARBIS, JUNGHANS, & STRUNTZ, *Federal Tax Litigation,* § 2.02[3] and 2.03 (1985).

14. Under 26 U.S.C. § 6402(a), "[i]n the case of any overpayment, the Secretary, within the applicable period of limitations, *may* credit the amount of such overpayment .. against any liability in respect of an internal revenue tax on the part of the person who made the overpayment ...." 26 U.S.C. § 6402(a) (emphasis added).

discretion in this decision of whether to apply an overpayment as a credit, a district court does not abuse its discretion in finding that it lacks jurisdiction over an action which the IRS has decided not to apply an overpayment as a credit to a tax liability. *O'Bryant v. United States of America,* 845 F.Supp. 1270, 1273 (C.D.Ill. 1994).

The Ninth Circuit has adopted a view similar to that set forth in *O'Bryant. Hutchinson v. United States,* 677 F.2d 1322, 1326 (9th Cir.1982). In *Hutchinson,* the taxpayer requested that the court find that he satisfied his tax liability for the year 1973 through an overpayment he made in 1971. The Commissioner refused to recognize the asserted overpayment at the time the taxpayer filed his suit for a recovery of an alleged overpayment of income taxes for the year 1973.[15] The Court held that a "mere claim that a liability had been satisfied by a transfer of credits from another tax period" is not sufficient to satisfy the full payment rule. *Id.* at 1326.

■ Moreover, nowhere in the tax code is there a provision for filing amended returns or for the IRS' acceptance of an amended return. *See Badaracco v. Commissioner,* 464 U.S. 386, 393, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984). Rather, amended returns are viewed as a "creature of administrative origin and grace" which the IRS can choose to accept or reject. *Id.; Miskovsky v. United States,* 414 F.2d 954 (3rd Cir.1969).

■ Plaintiffs try to factually distinguish their situation from the taxpayer in *Hutchinson* by claiming that in their case, they are not trying to manipulate jurisdiction by filing the amended returns. Instead, Plaintiffs argue that here, it is the

Government who created the overpayment through its audit and finding that the SSSS arbitration amount should be applied to the 1991 calendar year. (Pl. Opp. at 15). Plaintiffs fail to provide any legal support for this proposition.

Plaintiffs' attempt to rest their argument upon the United States Tax decision in *Welch Jr. v. United States,* 94–2 U.S.T.C. ¶ 50535, 1994 WL 406408 (N.D.Ill. 1994) is unconvincing because Plaintiffs reach to far. In *Welch,* the taxpayer had a tax deficiency for 1983 but overpayments for 1985, 1986, and 1987. He filed a complaint in district court seeking money that he claimed the Government wrongfully withheld. The IRS applied the overpayments in 1985, 1986 and 1987 to the tax deficiency for 1981. The court held that although the IRS allowed this credit, the district court was not stripped of jurisdiction over the refund claims for 1985, 1986, and 1987. In Plaintiffs' case, the IRS never determined that overpayments in 1992 and 1993 were valid and should be applied to the tax deficiency for 1991.

The Court finds that *Hutchinson* controls and that the IRS had the discretionary authority to accept or decline Plaintiffs' amended return. Here, the IRS never accepted Plaintiffs alleged overpayments as credits. Therefore, the Court declines to find that these alleged overpayments satisfy the full payment rule for the 1991 deficiency.

**d. The Court rejects Plaintiffs' argument that their alleged withholding of $32,672 should be applied to their 1991 deficiency.**

Plaintiffs third argument in support of their belief that the full-payment rule has

---

Section 7422(d) of Title 26 also affirms the discretionary nature of the application of credits. It states the following:

> The credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit *is allowed.*

26 U.S.C. § 7422(d).

**15.** The Plaintiff in *Hutchinson* also sought declarative and injunctive relief with respect to his entitlement to credits based on the alleged overpayment for prior years and compensatory and exemplary damages for the alleged wrongful conduct of IRS employees in connection with their denial of the claimed credits.

been met involves an alleged withholding credit of $32,672 by Plaintiff William Shannahan's employer.

### i. Statement of facts

On March 4, 1996, the IRS completed an audit of Plaintiffs 1991 tax liabilities. (*UF*: SS ¶ 5; SGI at p. 2). Through this audit, the IRS determined that an additional $163,952 should be reported on Plaintiffs' 1991 tax return. (Decl.Darmstadter, Exh. D–9). Of this amount, the IRS determined that $163,355 should have been reported as part of Plaintiffs' 1991 wages. *Id.* The $163,355 amount was the award Plaintiffs received in the SSSS arbitration—$45,000 of this amount was given to Plaintiffs by SSS in 1991 and the remaining $118,355 was the amount of money deposited in the SSSS attorney/client trust account in 1991, 1992, and 1993. (Decl. Pls., filed July 24, 1998, at ¶ 26).

Plaintiffs believe that since the $163,355 amount was added as income, they should receive a withholding credit of $32,672 (20% of $163,355) to reflect the amount of money SSSS should have withheld in federal income taxes as Plaintiffs' employer. Plaintiffs filed an amended 1991 return which reflected this credit (Compl., Exh. A) but the IRS never issued an assessment recognizing the credit.

If this credit were allowed, it would be added to the $137,220 which Plaintiffs have already paid and would result in a total payment of $169,392. This would exceed Plaintiffs 1991 deficiency of $163,952.

### ii. Discussion

The Ninth Circuit has clearly held that under 26 U.S.C. § 31(a), a taxpayer is only entitled to a tax credit for amounts which the taxpayer's employer *"actually withheld from his wage."* *Edwards v. Commissioner,* 323 F.2d 751, 752 (9th Cir. 1963). The Government has shown that it has not assessed this credit of $32,672 to Plaintiffs. *See* Decl. Darmstadter, Exh. B (Certificate of Assessments and Payments). Therefore, the burden shifts to Plaintiffs to provide the Court with evidence that their employer did actually withhold these amounts. *See Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiffs have only provided evidence that they filed an amended return for 1992 which reflected the amount of a withholding credit of $32,672. However, this does not prove that Plaintiffs employers actually withheld these amounts; Plaintiffs provide no W–2 forms to indicate this amount was actually withheld. Moreover, the IRS has the discretion to accept or deny an amended return. *See Badaracco v. Commissioner,* 464 U.S. 386, 393, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984). Therefore, Plaintiffs are not entitled to apply this credit to their 1991 tax deficiency as a matter of law.

### e. The Court rejects Plaintiffs argument that they are entitled to credit for amounts of money the IRS seized after Plaintiffs filed their complaint.

### i. Statement of facts

The IRS seized $3,180.12 in July 1996, which was before Plaintiffs filed this instant complaint. (*UF*: SS ¶ 7; Decl. Darmstadter, filed May 21, 1998, Exh. B; Pls. Decl., filed July 24, 1998 at ¶ 35). The IRS also seized money on two other occasions after Plaintiffs filed their complaints—on November 18, 1996 in the amount of $10,370 and on December 12, 1996 in the amount of $6,730. (*UF*: Decl, Darmstadter, filed July 24, 1998, Exh. B–3; Decl. Pls. at ¶ 35; *see also supra* note 10). Plaintiffs argue that these amounts should be credited toward their 1991 deficiency, even though they were seized after the filing of the complaint because of "[t]he concept of fundamental fairness and equity demands that this be done." (Pls. Opp. at 16). Plaintiffs provide no legal support for this argument.

### ii. Discussion

As stated above, the issue of jurisdiction in a tax refund suit is determined by the facts that existed when the action was filed. *Hutchinson v. United States,* 677 F.2d 1322, 1325–26 (9th Cir.1982). The full-payment rule requires the full

payment of taxes *before* an income tax refund action can be maintained in a district court. *Flora v. United States*, 362 U.S. 145, 177, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). As the November 18, 1996 and the December 12, 1996 seizures occurred after Plaintiffs filed their complaint, these amounts cannot be credited towards Plaintiffs' 1991 deficiency as a matter of law.

Having found that none of Plaintiffs' arguments provide a basis for finding that the full-payment rule has been met, the Court finds it lacks jurisdiction over Plaintiffs' first cause of action for a refund for 1991. Therefore, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiffs' first cause of action for the 1991 calendar year.

### 2. Calendar year of 1992

#### a. Statement of facts

On their 1992 taxes, Plaintiffs claimed a withholding credit in the amount of $59,210 and a tax liability of $34,216. (*UF:* SS ¶¶ 10, 12; SGI at p. 3). On November 22, 1993, the IRS credited Plaintiffs for the $59,210 and issued a refund of $24,289.[16]

The IRS subsequently audited Plaintiffs 1992 taxes and determined that Plaintiffs W–2 forms only indicated a $10,913.70 withholding by Plaintiffs' employer, not the $59,210 as reported on Plaintiffs' 1992 tax forms. (Decl. Darmstadter, ¶ 15 and Exh. E–1). The IRS then made a partial reversal of $48,296.[17] (*UF:* SS at ¶ 16; SGI at p. 4). In addition, the IRS determined that Plaintiffs' actual tax deficiency for 1992 was $12,569. (*UF:* SS ¶ 14; SGI at p. 4).

The Government argues that Plaintiffs created a "phantom withholding" by overstating the amount Plaintiffs' employer withheld in federal income taxes. (Gov't Mem. at p. 14). By reporting an amount more than actually withheld, Plaintiffs did not pay their 1992 income taxes because the amount of their alleged credit exceeded their tax liability. *Id.* at p. 17. The Government contends that since Plaintiffs' employer actually withheld only $10,913.70, and the tax deficiency was $12,569, Plaintiffs have not fully paid the amount necessary for this Court to have jurisdiction over Plaintiffs' action. *Id.*

Plaintiffs argue that they are entitled to the full $59,210 withholding credit because Plaintiffs' employer failed to properly withhold taxes from distributions made to Plaintiffs in 1992. (Pl. Opp. at p. 18–19). In addition, Plaintiffs believe that they are entitled to the credit because the IRS had applied this credit on October 23, 1993, as shown in the certificate of assessment for 1992. *Id.*

#### b. Discussion

As stated above in Sec. IV.A.1.d.ii, Plaintiff cannot take a credit for a withholding unless his employer actually withheld this amount. *See Edwards v. Commissioner*, 323 F.2d 751, 752 (9th Cir.1963). The amounts "actually withheld" by Plaintiffs employer is evidenced by Plaintiffs' 1992 W–2 forms, and this amount is $10,914. (Decl.Darmstadter, Exh. E–1). Plaintiffs have shown no admissible evidence that their employer withheld more than this amount. The only evidence provided by Plaintiffs is the memo written by Mr. Eischen. *See supra* Sec. III (Objections to

---

**16.** This amount of $24,289 is determined by the following computation:

| | |
|---|---|
| $59,210 | (amount claimed by Plaintiffs as a withholding credit) |
| − $34,216 | (alleged tax liability Plaintiffs' original 1992 tax form) |
| − $ 63.90 | (miscellaneous credit—Decl. Darmstadter at ¶ 13) |
| − $ 641.10 | (miscellaneous credit—Decl. Darmstadter at ¶ 13) |
| $24,289.00 | |

This refund is part of the amount the Government seeks to recover in its second count of the Amended Counterclaim.

**17.** This partial reversal of $48,296 was derived by subtracting $10,913.79 (the amount reflected in Plaintiffs' W–2 forms) from $59,-210 (Plaintiffs' claimed withholding).

Evidence). As stated above, this memo is inadmissible and therefore cannot be considered by this Court in deciding a motion for summary judgment. *Id.* Moreover, even if this memorandum were admissible, it does not show that Plaintiffs' employer actually withheld $32,672 during the 1992 calendar year from Plaintiffs' wages, (*see supra* note 4), and therefore no genuine issues as to any material fact exist as to whether Plaintiffs' employer withheld the amount they claim. The Court rejects Plaintiffs' first argument.

The Court now turns to Plaintiffs' second argument that because the IRS has recognized the credit of $59,210 on October 23, 1993, it cannot divest this credit to deprive this Court of jurisdiction over this matter. Plaintiffs are correct that on October 22, 1993, the IRS did assess Plaintiffs taxes for 1992 and did recognize a withholding credit of $59,210. (Decl.Darmstadter, Exh. B–4). Plaintiffs argue that the decision in *Simmons v. United States,* 29 Fed.Cl. 136 (1993) controls.

In *Simmons,* the Government posted certain credits on the taxpayer's certificate of assessment to reflect overpayments made on prior tax returns. The Government then reversed these credits and argued that the credits should not be allowed as payments because they had been reversed. The court disagreed with the Government and held that "credits to a Certificates of Assessment ... count as payments." *Id.* at 141 (citing I.R.C. § 7422(d)).[18]

Although *Simmons* suggests that because the credit was recognized by the IRS, the Government is bound to recognize the credit even if later reversed, the Court declines to accept that proposition for this case. As the Government correctly points out, Plaintiffs' credit of $59,210 was never paid by Plaintiffs' employer or by Plaintiffs. Therefore, the Government,

based on erroneous information supplied by Plaintiffs, credited Plaintiffs for $59,210 on their 1992 taxes. The taxpayer in *Simmons* was seeking credit for amounts already paid (overpayments from a previous tax year). Therefore, the taxpayer in *Simmons* had actually paid the alleged amount which was applied as a payment. Here, no payment has been made.

To allow Plaintiffs to claim a credit where no money has been paid destroys the philosophy behind the full-payment rule. *See Flora v. United States,* 362 U.S. 145, 175, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) (stating "the Government has a substantial interest in protecting the public purse, an interest which would be substantially impaired if a taxpayer could sue in a District Court without paying his tax in full."). Adopting Plaintiffs' position would open up district courts to tax refund suits whenever the taxpayer claims a withholding greater than its tax liability, even when the taxpayer has no proof that his or her employer actually withheld the amount alleged. The Court believes that if it adopted Plaintiffs' position, it would be an end-run to the full-payment rule.

Plaintiffs had a choice when they sought their relief. They could have filed their action with a tax court or with a federal district court. If they wanted to avoid the harsh impact of the full payment rule, they could have filed their action in tax court. *See Flora v. United States,* 362 U.S. 145, 175, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). Yet, Plaintiffs chose to file their action with this Court, and in so doing, Plaintiffs had to ensure they met the full payment rule. Plaintiffs have failed to rebut the Government's showing that the Plaintiffs' employers actually withheld the amounts they claim. Therefore, the Court **GRANTS** the Government's motion for summary judgment on Plaintiffs' second

---

18. Under 26 U.S.C. § 7422(d). "[t]he credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit *is allowed.*" (emphasis added).

claim for a refund for the 1992 calendar year.

### 3. Calendar year of 1993

The Plaintiffs filed their 1993 income tax return on July 3, 1994. (SS at ¶ 25; SGI at p. 6 [19]). This return reflected a total income tax liability of $75,144. (*UF:* SS at ¶ 25; SGI at p. 6). On August 15, 1994, the IRS assessed an income tax liability for the 1993 year in the amount of $75,144, the same amount as reflected on Plaintiffs' income tax return. (*UF:* SS at ¶ 26; SGI at p. 6).

On this 1993 return, Plaintiffs indicated an $870 federal income tax withholding payment and paid an estimated tax payment of $30,000. (Decl. Darmstadter; Exh. F-1, F-3). In addition, Plaintiffs paid $10,000 on July 3, 1994 along with their 1993 return. (Decl. Darmstadter; Exh. B-5). These figures, added together, total $40,870 paid on the 1993 tax deficiency. The IRS conducted an audit of Plaintiffs' 1993 income tax liabilities. Based on this audit, the IRS reduced Plaintiffs' total tax liabilities from $75,144 to $41,544. (*UF:* SS at ¶ 25 and 29, SGI at p. 6–7). This means that Plaintiffs have not paid $674 of their alleged 1993 tax deficiency.

Plaintiffs claim that on September 17, 1994, they filed an amended return for 1993 which reflected an overpayment of $981. (Decl.Pls.¶ 23). On November 10, 1995, Plaintiffs filed an amended return reflecting a decrease of $84,759 in their 1993 income. (Compl., Exh. D). On this amended return, Plaintiffs reflected a refund of $29,592.

Plaintiffs also claim that they are entitled to a withholding credit of $28,722 generated by the IRS in its audit. (Pls. Opp. at 21).[20] Plaintiffs contend that they claimed this credit on their 1040X filing. This amended return was posted on the Plaintiffs Certificate of Assessment on September 27, 1994, but no assessment or credit was reflected. (Decl.Darmstadter, Exh. B–6).

The Government established that the IRS does not have to provide taxpayers with a credit for federal income tax withholding unless the amount is actually withheld by the employer. *See Edwards v. Commissioner,* 323 F.2d 751, 752 (9th Cir. 1963). It has also provided this Court with Plaintiffs' 1993 W–2 statement showing a federal income tax withholding of $870. (Decl.Darmstadter, Exh. F–1). The burden therefore shifts to Plaintiffs to show that summary judgment is not appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Plaintiffs claim that the fact that the IRS "posted" their first 1993 amended return on September 27, 1994 "leads to the inescapable conclusion that the [IRS], by ignoring the filing of a mandated form, has unilaterally attempted to deprive this court of jurisdiction." (Pls. Opp. at 21). Plaintiffs then cite a tax court decision in which the court noted that in the following situations, the validity of amended returns have been upheld:

(1) the amended return was filed prior to the date prescribed for filing a return; (2) the taxpayer's treatment of the contested item in the amended return was not inconsistent with his treatment of that item in his original return; or (3) the taxpayer's treatment of the item in the original return was improper and the taxpayer elected on of several allowable alternatives in the amended return.

---

19. Plaintiffs dispute the filing date, which they believe is June 17, 1994 rather than July 3, 1994. For the reasons stated *supra* in note 11, the Court adopts the date the IRS received Plaintiffs return as the filing date.

20. Plaintiffs arrive at this figure through the following computation:

$29,592 (amount Plaintiffs claimed on their amended 1993 tax return—Pls. Compl., Exh. D)
−$ 870 (amount claimed on original 1993 return)
$28,722

*Goldstone v. Commissioner*, 65 T.C. 113, 116, 1975 WL 3008 (1975). Plaintiffs then state, "[i]t is submitted that the filing of a refund claim, even if interpreted to be an amended return, would raise a genuine issue of fact as to whether the alleged amended return falls within one of the exceptions cited in *Goldstone.*"

Plaintiffs have failed to carry their burden in this summary judgment motion for several reasons. First, the above statement is conclusory and does not direct the Court's attention to any specific evidence as to which of the *Goldstone* exceptions might be applicable to this case. *See Schneider v. TRW, Inc.*, 938 F.2d 986, 990 n. 2 (9th Cir.1991) (stating that the Court has no duty to consider proof not specifically directed to its attention). Second, Plaintiffs have failed to show any evidence that their employer actually withheld $28,-722 in federal income taxes for Plaintiffs in 1993. For the same reasons as stated above in the discussion of the 1992 tax year, Plaintiffs have failed to rebut the Government's showing that it is entitled to summary judgment as a matter of law. Therefore, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiffs' third claim for a refund for the 1993 calendar year.

**B. Judicial Exception to the Anti–Injunction Act (Count 4 of the Complaint).**

As their fourth cause of action, Plaintiffs request that this Court enjoin the IRS from collecting any alleged tax liability against Plaintiffs for 1991.

Under 26 U.S.C. § 7421(a) ("the Anti–Injunction Act"), no court has jurisdiction to maintain an action seeking to restrain the assessment or collection of any tax.[21] Thus, the Anti–Injunction Act divests the district court, in most cases, of jurisdiction over cases in which the plaintiff seeks to enjoin the collection of taxes. However, there is a judicial exception to the rule that a court may not enjoin the IRS from assessing or collecting a tax.[22] An injunction may be granted by a court where the plaintiff can demonstrate the following: "(1) under no circumstances can the government ultimately prevail on the merits; and (2) the taxpayer will suffer irreparable injury without injunctive relief." *Elias v. Connett*, 908 F.2d 521, 525 (9th Cir.1990); *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). Both of these prongs must be met in order for a court to maintain jurisdiction over a suit for injunctive relief against the assessment or collection of a tax. *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 758, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974).

**1. Government's likelihood of success on the merits prong**

Under the first prong of the judicial exception, the Court must evaluate the Government's likelihood of success on the merits based on the information available to the Court at the time the complaint was filed by the Plaintiffs. *Church of Scientology*, 920 F.2d at 1485–86. Upon such review, "[o]nly if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained." *Enochs*, 370 U.S. at 7, 82 S.Ct. 1125. Plaintiffs bear the burden of establishing that the Government's claim is "baseless." *Church of Scientology*, 920 F.2d at 1486.

Here, Plaintiffs dispute the accuracy of the Government's assessment that Plain-

---

21. The purpose of this act "is to preserve the Government's ability to assess and collect taxes with a 'minimum of pre-enforcement judicial interference' and 'to require that the legal right to the disputed sums be determined in a suit for refund.'" *Church of Scientology of California v. United States*, 920 F.2d 1481, 1484–85 (9th Cir.1990) (citations omitted).

22. Statutory exceptions to this rule also exists under 26 U.S.C. §§ 6212(a) and (c), 6213(a), 6672(b), 6694(c), 7426(a) and (b)(1), and 7429(b). Neither party argues that any of these statutory exceptions apply.

tiffs have a tax deficiency of $92,697 for 1991. (Pls. Opp. at 22).[23] This deficiency is a result of the Government's belief that Plaintiffs should be charged with the receipt of a constructive dividend of $293,194 from SSS Investment Corporation. (Decl. Pls. at ¶ 44). Plaintiffs argue that they never received this dividend because they had sold their stock in SSS Investment Corporation to Bubba Investment Company, Ltd. on December 26, 1990. (Pl. Opp. at 22–23; Decl. Pls., Exh. 5 ("Stock Purchase Agreement")).

▮ Under 26 U.S.C. § 301, a distribution made by a corporation to its shareholders may be taxed to the shareholder. This statute is limited to distributions made to shareholders. 26 U.S.C. § 301. Plaintiffs have provided the Court with a document showing it sold its shares in the SSS Investment Corporation before 1991, the year of the disputed distribution. Therefore, if Plaintiffs did receive money from SSI Corporation, it was not as a shareholder and does not fall under 26 U.S.C. § 301. The Government does not dispute this sale.

The only argument the Government can provide is that it "contends that the Shannahans had, at the very least an indirect ownership interest in SSS Investment Corp. in 1991 ...... [because] Bubba [Investment] is a wholly owned by the Liam Paul Family Cayman Trust whose listed beneficiaries include the plaintiffs and their children." (Gov't Mem. at p. 21, n. 26). However, the Government does not provide the Court with any evidence of this "contention" and the Court therefore will not consider it. The Court finds that Plaintiffs have shown that the Government does not have a likelihood of success in its claim of the $92,697 deficiency as it relates to the alleged constructive dividend by SSS Investment Corp.

**2. Irreparable injury to taxpayer prong**

▮ The irreparable injury prong cannot be met easily. Generally, "the opportunity to sue for a refund is an adequate remedy at law which bars the granting of an injunction." *Church of Scientology*, 920 F.2d at 1489; *see also Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (finding that "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."). Moreover, "mere financial hardship does not establish irreparable harm." *Hughes v. United States*, 953 F.2d 531, 536 (9th Cir.1992); *see also Church of Scientology*, 920 F.2d at 1489 ("finding that [m]ere allegations of financial hardship are insufficient to support a finding of irreparable harm."). The Ninth Circuit has found irreparable injury when a taxpayer was deprived of his ability to provide his family with the necessities of life and had lost the opportunity to challenge the claimed deficiency in the tax court without having to pay the tax. *Jensen v. IRS*, 835 F.2d 196, 198 (9th Cir.1987).

In this case, Plaintiffs argue that they face the loss of their home if the injunction is not granted. The IRS has recorded a lien on the Plaintiffs home, and the Plaintiffs fear that the IRS might seize the home to collect the outstanding liabilities. (Pls. Opp. at 23). Plaintiffs argue that "real property is unique" and that this home is the only one Plaintiffs' children have ever known. The Government argues that "even if the [$92,697] tax assessments were unjustified, the plaintiffs would be able to recover any overpayment of tax in a subsequent refund suit." (Gov't Mem. at 21).

---

**23.** Plaintiffs had a tax deficiency of $163,952 for 1991. (*UF:* SS at ¶ 5; SGI at p. 2).

Plaintiffs contest the validity of $92,697 of this $163,952 deficiency.

**1144**

 The Court finds that Plaintiffs loss of home is insufficient to establish irreparable injury. While the Court is sympathetic to the fact that Plaintiffs have lived in their home since 1987, the loss of the home does not rise to the level of irreparable injury. Plaintiffs' situation is far different from that of the taxpayer in *Jensen.* Plaintiffs had the choice of filing their claim with the tax court, which they freely declined to do. Instead, they chose to pursue their claim in the district court. Once they made that choice, they needed to pay the full payment of the tax owed in order for this Court to maintain jurisdiction. Therefore, Plaintiffs, unlike the taxpayer in *Jensen* had an opportunity to challenge the alleged tax deficiency in tax court. Moreover, the loss of a home, while serious, is far different from the taxpayer's situation in *Jensen* who was unable to provide necessities of life to his family. Plaintiffs have failed to provide this Court with evidence showing that payment of the disputed tax would deprive them of the necessities of life.

The Court finds that Plaintiffs have failed to carry their burden of showing both prongs of the *Elias/Enochs* test. Therefore, the Court **GRANTS** the Government's motion for summary judgment as to Plaintiffs' fourth cause of action.

## V. CONCLUSION

For the reasons stated above, the Court finds that it lacks jurisdiction over all four causes of action in Plaintiffs' complaint. Therefore, the Court **GRANTS** Defendants' motion for summary judgment. The Court **DISMISSES** without prejudice Plaintiffs' first, second and third actions and **DISMISSES** with prejudice Plaintiffs' fourth cause of action.

**IT IS SO ORDERED.**